# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, ET AL., | § § § § § | Civil Action No. 4:17-CV-00598 Judge Mazzant |
| v. | § § § | |
| NAVISTAR INTERNATIONAL CORPORATION, ET AL. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Stay Proceedings Pending Transfer to Multi-District Litigation (Dkt. #8). After reviewing the relevant pleadings and motion, the Court find the motion should be denied.

## BACKGROUND

In 2014, Tango Transport, LLC, Tango Logistx, LLC, Gorman Group, Inc., Tango Truck Services, LLC, Tango Enterprises, Inc., and GMGO, LLC (collectively "Tango") filed suit in the United States District Court for the Western District of Louisiana. Specifically, Tango filed suit against Navistar International Corporation, Navistar Inc., Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation (collectively "Navistar"). The basis of the lawsuit involved alleged defects in over 450 International MaxxForce engines in trucks purchased or leased by Tango from Navistar between 2011 and 2013. Tango later voluntarily dismissed the case.

Later in 2014, Tango refiled its suit in Louisiana state court. Although the basis and allegations of the lawsuit resembled the previous federal action, Tango added ITA Truck Sales & Services, LLC as a defendant (collectively with Navistar "Defendants"). In August of 2015, Tango

and Defendants reached a settlement agreement that resulted in the state court dismissing all claims with prejudice.

In April of 2016, Tango filed for bankruptcy. In November of 2016, Tango commenced this action as an adversary proceeding in the Bankruptcy Court by filing an Original Complaint against Defendants. Specifically, Tango sought avoidance of the settlement agreement alleging they did not receive reasonably equivalent value for the release of their claims. In December of 2016, the Bankruptcy Court confirmed the Plan and appointed Christopher Moser ("Moser") as the Trustee of the Plan Trust, which succeeded Tango in this action. In April of 2017, Moser filed an amended complaint adding recovery of the value of the defective engine claims, or in the alternative, the return of the releases.

On June 2, 2017, Defendants, in Bankruptcy Court, filed a Motion to Withdraw the Reference. On August 25, 2017, the Bankruptcy Court issued a Report and Recommendation, recommending the Court withdraw reference. On December 19, 2017, United States District Judge Ron Clark adopted the recommendation and transferred the matter to the undersigned.

On January 17, 2018, Defendants filed a Notice of Potential Tag-Along Action, notifying the MDL Panel of the present lawsuit and its potential as a tag-along action.[1] On January 19, 2018, the MDL Panel issued a Conditional Transfer Order, conditionally transferring the matter to the MDL. On January 26, 2018, Moser filed a Notice of Opposition to the Conditional Transfer Order. As a result, the MDL Panel issued a briefing on the transfer request.

Subsequently, on January 26, 2018, Defendants filed a Motion to Stay Proceedings Pending Transfer to Multi-District Litigation (Dkt. #8). Moser filed his response (Dkt. #19) on February 9, 2018, and Defendants filed their reply (Dkt. #21) on February 21, 2018.

---

[1] On December 17, 2014, the MDL Panel initiated MDL No. 2590 when it transferred numerous civil actions—relating to the MaxxForce Advanced EGR engines—to the United States District Court for the Northern District of Illinois.

2

**LEGAL STANDARD**

A court maintains the inherent power to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In determining whether to grant a stay, the Court "weighs competing interests and balances competing hardships." *Nguyen v. BP Expl. & Prod., Inc.*, No. H-10-2484, 2010 WL 3169316, at *1 (S.D. Tex. Aug. 9, 2010). Specifically, the Court considers: "(1) the potential prejudice to Plaintiffs from a brief stay; (2) the hardship to [the defendant] if the stay is denied; and (3) the judicial efficiency in avoiding duplicative litigation if the [MDL] Panel grants [the defendant's] motion." *Id.*

**ANALYSIS**

Defendants contend that each of the aforementioned factors weigh in favor of granting a stay. Alternatively, Defendants request the Court extend the deadlines set forth in the Court's scheduling order by thirty days. In response, Moser avers the factors weigh in favor of denying the stay and a thirty-day extension is unwarranted. The Court addresses each issue in turn.

**I. Defendants' Request for a Stay**

As explained above, the Court considers three factors when determining whether to grant a stay pending a ruling by the Panel on whether to transfer an action to MDL. The Court discusses each factor separately.

**a. Potential Prejudice to Plaintiff**

Defendants argue that granting a stay will benefit, not prejudice, Moser. Specifically, Moser will receive "the benefit of the discovery conducted and analyzed by similarly situated parties already in the MDL." (Dkt. #8 at p. 6). In other words, Moser "stands to benefit from the receipt of materials already determined to be discoverable through the work of the parties involved

3

in the MDL." (Dkt. #8 at p. 7).  Further, Defendants contend that any potential prejudice to Moser is outweighed by the "immense costs" imposed on Defendants (Dkt. #8 at p. 7).

Moser avers that "the parties have largely completed the exchange of initial disclosure materials pursuant to the [Court's] Proceeding Order." (Dkt. #19 at p. 8).  As such, Moser argues "[i]t would be prejudicial to . . . impose a stay now, leaving the initial disclosure work partially complete." (Dkt. #19 at p. 8).

In the Court's Order Governing Proceedings (Dkt. #6), the Court ordered the parties to complete their initial mandatory disclosures by February 5, 2018.  As part of this disclosure, the parties produced all information relevant to their claims and defenses.  *See* FED. R. CIV. P. 26(a)(1)(ii); *see also* LOCAL RULE CV–26(d) (a piece of information is relevant to a party's claim or defense if it is information that (1) would not support the disclosing parties' contentions; (2) includes those persons who might reasonably be expected to be deposed or called as a witness; (3) is likely to influence or affect the outcome of a claim or defense; (4) deserves to be considered in the preparation, evaluation or trial of a claim or defense; and (5) reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense).

Defendants claim a stay benefits Moser because transfer to the MDL allows Moser the ability to receive discoverable materials.  The Court disagrees.  Over one month has passed since the parties completed their initial mandatory disclosures.  As explained above, the scope of such disclosures is broad and expansive.  As such, the Court finds any benefit Defendants contend Moser will receive via a stay has already been received.  Further, the Court agrees with Moser that imposing a stay now disrupts future disclosures and leaves discovery incomplete.  As such, the Court finds this factor weighs in favor of denying a stay.

### b. Hardship to Defendants if Stay is Denied

Defendants contend that denying a stay creates a hardship because Defendants "will suffer an enormous expense of resources associated with repetitive and duplicative discovery production." (Dkt. #8 at p. 7). Stated differently, Defendants claim that requiring compliance of the initial mandatory disclosure "would result in a burdensome and extremely costly duplications of efforts." (Dkt. #8 at p. 9). Conversely, Moser argues that since the initial mandatory disclosures have already taken place, Defendants' argument is essentially moot. Further, Moser avers that Defendants are not prejudiced by the denial of stay since Defendants are unlikely to succeed on their transfer request.

The brunt of Defendants' alleged hardship is complying with the February 5, 2018 discovery deadline. Because the deadline and disclosures already took place, the Court finds Defendants' argument is unpersuasive. As such, the Court finds this factor favors denying a stay.

### c. Judicial Efficiency

Defendants argue that "judicial economy would be served by a stay . . . to avoid, among other things, duplicative efforts in collecting, reviewing, and producing voluminous documents potentially relevant to the claims at issue." (Dkt. #8 at p. 9). Moser claims that since discovery is underway and initial mandatory disclosures have taken place, a stay is inefficient.

As explained above, the parties complied with the initial mandatory disclosure deadline and are currently participating in discovery. Thus, Defendants' argument is misplaced. Further, the Court finds that Defendants failed to act diligently or expeditiously in filing their Notice of Tag-Along and Motion to Stay. Tango commenced this action in November of 2016. However, Defendants did not file their Notice of Tag-Along until January 17, 2018 and Motion to Stay until

January 26, 2018.[2]  As a result, the predicament Defendants find themselves in is of no fault but their own.  As such, the Court finds a stay at this point does not promote judicial efficiency.  Thus, this factor favors denying a stay.

Because all three factors favor denying a stay, the Court finds Defendants' request for a stay should be denied.

## II. Extension of Deadlines

In the alternative, Defendants request the Court extend all deadlines in the Scheduling Order by thirty days.  Moser responds that given the passage of time since Defendants filed their motion, such request is moot.  The Court agrees.  Because more than thirty days have passed since Defendants filed their motion and since the initial mandatory disclosure deadline, the Court finds Defendants' request inappropriate.  As such, the Court denies Defendants' request for a thirty-day continuance.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Stay Proceedings Pending Transfer to Multi-District Litigation (Dkt. #8) is hereby **DENIED.**

**SIGNED this 6th day of March, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[2] Moreover, Defendants admitted their intent to seek transfer in June of 2017, but failed to take any affirmative action until seven months after the fact.