# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, ET AL., <br><br> v. <br><br> NAVISTAR INTERNATIONAL CORPORATION, ET AL. | § <br> § <br> § Civil Action No. 4:17-CV-00598 <br> § Judge Mazzant <br> § <br> § <br> § <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Christopher Moser's, as Plan Trustee, Motion to Compel Production of Documents from Navistar International Corp. and Navistar, Inc. (Dkt. #49). After reviewing the relevant pleadings and motion, the Court finds that the motion should be granted in part.

## BACKGROUND

In 2014, Tango Transport, LLC, Tango Logistx, LLC, Gorman Group, Inc., Tango Truck Services, LLC, Tango Enterprises, Inc., and GMGO, LLC (collectively "Tango") filed suit in the United States District Court for the Western District of Louisiana. Specifically, Tango filed suit against Navistar International Corporation, Navistar Inc., Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation (collectively "Navistar"). The basis of the lawsuit involved alleged defects in over 450 International MaxxForce engines in trucks purchased or leased by Tango from Navistar between 2011 and 2013. Tango later voluntarily dismissed the case.

Later in 2014, Tango refiled its suit in Louisiana state court. Although the basis and allegations of the lawsuit resembled the previous federal action, Tango added ITA Truck Sales &

Services, LLC as a defendant (collectively, with Navistar, "Defendants"). In August of 2015, Tango and Defendants reached a settlement agreement that resulted in the state court dismissing all claims with prejudice.

In April of 2016, Tango filed for bankruptcy. In November of 2016, Tango commenced this action as an adversary proceeding in the Bankruptcy Court by filing an Original Complaint against Defendants. Specifically, Tango sought avoidance of the settlement agreement alleging they did not receive reasonably equivalent value for the release of their claims. In December of 2016, the Bankruptcy Court confirmed the Plan and appointed Christopher Moser ("Moser") as the Trustee of the Plan Trust, which succeeded Tango in this action. In April of 2017, Moser filed an amended complaint adding recovery of the value of the defective engine claims, or in the alternative, the return of the releases.

On June 2, 2017, Defendants, in Bankruptcy Court, filed a Motion to Withdraw the Reference. On August 25, 2017, the Bankruptcy Court issued a Report and Recommendation, recommending the Court withdraw reference. On December 19, 2017, United States District Judge Ron Clark adopted the recommendation and transferred the matter to the undersigned. On June 11, 2018, Moser filed a Motion to Compel (Dkt. #49). On July 2, 2018, Defendants filed their response (Dkt. #64). On July 9, 2018, Moser filed his reply (Dkt. #70). On July 13, 2018, the Court held a hearing on Moser's motion to compel.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La.*

*Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #25 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on

the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

**ANALYSIS**

Moser requests that the Court compel Navistar to produce three separate categories of documents. Specifically, Moser seeks (1) documents relating to prior settlements between Navistar and other trucking companies involving claims for defects in the engine's emissions system ("EGR Defect"), (2) documents relating to the value of EGR Defect claims that Navistar provided to Volkswagen as a result of due diligence, and (3) trial and deposition transcripts, and expert reports from other EGR Defect cases. The Court addresses each category in turn.

## I. Documents Relating to Other Settlements

In Requests for Production ("RFP") 31–34 and 36–39, Moser seeks production of documents relating to prior settlements regarding EGR Defects (Dkt. #49, Exhibit 1 at pp. 12–13). Moser contends such information is discoverable because he "must establish that Tango's released EGR Defect claims were worth more than the consideration Tango received." (Dkt. #49 at p. 7). Navistar responds that such documents are highly confidential and irrelevant. Specifically, Navistar argues that settlement documents from other litigation carry no probative value because there are numerous factors that play into resolution of claims and there are distinct differences between those cases and the case at hand.

The Court finds that Moser's requested information is discoverable to a limited extent. Specifically, the Court limits the requests to all documents, including communications, concerning settlement and potential settlement between Navistar and entities that purchased and/or leased 400 or more trucks containing MaxxForce Engines from 2009 through 2014 resolving claims or potential claims concerning EGR Defects in MaxxForce Engines. Further, such production includes, but is not limited to, complaints, demand letters, and documents identifying the material terms of the pertinent settlement agreements. Because such information may be confidential, Navistar may produce the aforementioned documents pursuant to the protective order in place. *See* (Dkt. #14).

## II. Due Diligence Documents

In 2016, Volkswagen purchased an interest in Navistar. Moser seeks "documents regarding Volkswagen's assessment of Navistar's litigation exposure related to EGR Defects." (Dkt. #49 at p. 11). Moser contends that such documents are relevant because "they may provide information regarding Navistar's or Volkswagen's assessments—or information leading to those

5

assessments—of Navistar's litigation liability relating to EGR Defects." (Dkt. #49 at p. 11). Navistar responds that the requested information is irrelevant, duplicative, and unnecessary.

The Court finds that such information is discoverable to a limited extent. Specifically, the Court limits the requested information to documents Navistar provided to Volkswagen in response to Volkswagen's due diligence concerning EGR Defects in MaxxForce Engines. Defendants may produce such documents, if necessary, pursuant to the Court's Protective Order (Dkt. #14).

### III. Documents from Other Litigation

In RFP 73–75, Moser seeks copies of all depositions and exhibits thereto, expert reports, including exhibits, and documents produced by Navistar and cited in any plaintiff's expert report from the *Milan* Action,[1] the *Service Steel* Action,[2] the *First Express* Action,[3] and the MDL[4] (Dkt. #49, Exhibit 1 at pp. 20–21). Additionally, in RFP 76, Moser seeks the trial transcripts and trial exhibits from the *Milan* and *Service Steel* Actions (Dkt. #49, Exhibit 1 at p. 21). Moser claims that the "plaintiffs in these other actions brought EGR Defect claims based on the same engine defects and similar misconduct as the claims Tango brought and released" making it "inevitable that the litigation materials from these other cases will contain evidence and information relevant to" Moser's claims (Dkt. #49 at p. 13).

Navistar avers that Moser's requests are contradictory because earlier in this litigation Moser fervently resisted transfer to the MDL because of the "few, if any, common factual issues" between the MDL and the case at bar (Dkt. #64 at p. 10). However, now Moser claims that "the litigation materials from these other cases will contain evidence and information relevant to the

---

[1] *Milan Supply Chain Solutions, Inc. v. Navistar, Inc.*, No. C14285, (Madison Cty. Tenn.)
[2] *Service Steel Warehouse, LP v. Navistar, Inc.*, No. 2014–52745, (Harris Cty. Tex.)
[3] *First Express, Inc. v. Navistar Inc., et al.*, No. 14C2769, (Davidson Cty. Tenn.)
[4] Currently, Navistar faces a multi-district litigation ("MDL") pending in the U.S. District Court for the Northern District of Illinois, No. 1:14-cv-10318, which involves numerous plaintiffs asserting claims against Navistar for alleged EGR Defects.

6

Trustee's claims." (Dkt. #64 at p. 11 (quoting Dkt. #49 at p. 13)). Irrespective, Navistar contends that Moser "failed to articulate how the cases for which [he] seek[s] all depositions, expert reports, trial transcripts, and trial exhibits are sufficiently similar to the case at bar." (Dkt. #64 at p. 13).

The Court finds that certain, but not all, documents from other cases are discoverable in this action. Regarding Moser's request for deposition transcripts and exhibits thereto, such request is limited to the deposition transcripts and exhibits of Navistar witnesses who discuss EGR Defects within MaxxForce Engines in the *Milan* Action, the *Service Steel* Action, the *First Express* Action, and the MDL. Concerning expert reports, including their exhibits, such request is confined to Navistar's experts who address EGR Defects in MaxxForce Engines in the *Milan* Action, the *Service Steel* Action, the *First Express* Action, and the MDL. Finally, as to trial transcripts and trial exhibits from the *Milan* and *Service Steel* Actions, Navistar must only produce the trial transcripts if they are already transcribed and within Navistar's possession. Further, Navistar must only provide those trial exhibits that are within its possession and that relate to EGR Defects in MaxxForce Engines. To the extent that Moser seeks additional information, the Court encourages Moser to request such information from public sources.

## CONCLUSION

It is therefore **ORDERED** that Moser's Motion to Compel (Dkt. #49) is hereby **GRANTED in part**. As such, Navistar is **ORDERED** to produce documents and information, to the extent it has not already done so and as described herein, to Moser no later than 5:00 p.m. on Friday, August 10, 2018.

**SIGNED this 27th day of July, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE