# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

CHRISTOPHER MOSER as Plan Trustee of § 
the Trust Under the Amended Joint Plan of § 
Liquidation of Tango Transport, LLC, ET § Civil Action No. 4:17-CV-00598
AL., § Judge Mazzant
 §
 §
v. §
 §
 §
NAVISTAR INTERNATIONAL §
CORPORATION, ET AL. §
 §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Navistar, Inc. and Navistar International Corporation Motion to Compel Discovery Responses (Dkt. #58). After reviewing the relevant pleadings and motion, the Court finds that the motion should be granted in part.

## BACKGROUND

In 2014, Tango Transport, LLC, Tango Logistx, LLC, Gorman Group, Inc., Tango Truck Services, LLC, Tango Enterprises, Inc., and GMGO, LLC (collectively "Tango") filed suit in the United States District Court for the Western District of Louisiana. Specifically, Tango filed suit against Navistar International Corporation, Navistar Inc., Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation (collectively "Navistar"). The basis of the lawsuit involved alleged defects in over 450 International MaxxForce engines in trucks purchased or leased by Tango from Navistar between 2011 and 2013. Tango later voluntarily dismissed the case.

Later in 2014, Tango refiled its suit in Louisiana state court. Although the basis and allegations of the lawsuit resembled the previous federal action, Tango added ITA Truck Sales & Services, LLC as a defendant (collectively, with Navistar, "Defendants"). In August of 2015,

Tango and Defendants reached a settlement agreement that resulted in the state court dismissing all claims with prejudice.

In April of 2016, Tango filed for bankruptcy. In November of 2016, Tango commenced this action as an adversary proceeding in the Bankruptcy Court by filing an Original Complaint against Defendants. Specifically, Tango sought avoidance of the settlement agreement alleging they did not receive reasonably equivalent value for the release of their claims. In December of 2016, the Bankruptcy Court confirmed the Plan and appointed Christopher Moser ("Moser") as the Trustee of the Plan Trust, which succeeded Tango in this action. In April of 2017, Moser filed an amended complaint adding recovery of the value of the defective engine claims, or in the alternative, the return of the releases.

On June 2, 2017, Defendants, in Bankruptcy Court, filed a Motion to Withdraw the Reference. On August 25, 2017, the Bankruptcy Court issued a Report and Recommendation, recommending the Court withdraw reference. On December 19, 2017, United States District Judge Ron Clark adopted the recommendation and transferred the matter to the undersigned. On February 5, 2018, Moser produced, in pertinent part, the following to Navistar: (1) electronic copies of emails of six former Tango employees (the "Employee Documents"), (2) emails received from Tango's former counsel, Bryan Cave, and Tango's former CRO, Morris Anderson, ("Third-Party Documents"), (3) access to hard copy documents in boxes contained in two warehouses: Dallas ("Dallas Boxes"), with an index created by Tango, and Shreveport ("Shreveport Boxes"), for which no index currently exists, and (4) remote access to Tango's operational systems (collectively, "Initial Disclosures").

On April 6, 2018, Navistar served Moser with its Requests for Production ("RFP") and Interrogatories (Dkt. #58, Exhibits 5–6). On May 7, 2018, Moser provided his response (Dkt. #58,

Exhibits 7–8). On June 18, 2018, Navistar filed a Motion to Compel (Dkt. #58). On July 2, 2018, Moser filed his response (Dkt. #67). On July 9, 2018, Navistar filed a reply (Dkt. #71). On July 13, 2018, the Court held a hearing on Navistar's motion to compel.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #25 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party

establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming

undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

**ANALYSIS**

Navistar alleges that Moser's Initial Disclosures and discovery responses are insufficient because (1) they are not limited to relevant information and fail to satisfy the requirements under Rule 34, (2) Moser incorrectly invokes his role as trustee to avoid providing meaningful discovery responses, and (3) Moser puts forth spurious objections to Navistar's interrogatories and fails to provide any substantive responses. The Court addresses each argument in turn.

I. **Moser's Production of Documents**

Navistar avers that Moser's Initial Disclosures constitute an overproduction "of information vastly comprised of irrelevant and/or disorganized electronic information." (Dkt. #58 at p. 4). Based on such production, Navistar contends that Moser failed to expend any effort culling irrelevant and immaterial information or identifying and producing relevant documents as required by federal and local discovery rules.[1] As a result, Navistar requests that the Court order Moser to re-review his production and eliminate irrelevant documents and to specifically identify the information that is relevant to its discovery requests.

Moser responds that Navistar fails to provide any evidence that the information produced contains excessive irrelevant documents. Moreover, Moser argues that Navistar's RFPs, which broadly seek information regarding all aspects of Tango's operations, contradict Navistar's now restricted concept of relevant information. Finally, Moser contends that Navistar's request should

---

[1] Navistar also complains that Moser improperly refused to produce documents possessed by Tango's third-party custodians. Moser responds that he provided information that he has access to, but certain information is no longer available to him since the third-party vendors no longer maintain a relationship with Tango. Because the information sought by Navistar is no longer in Moser's possession, custody, or control, by virtue of Tango's estranged relationships with third-party vendors, the Court finds that Moser lacks the ability to produce such information. *See Villarreal v. First Presidio Bank*, No. EP-15-CV-88-KC, 2017 WL 5505383, at *1 (W.D. Tex. June 9, 2017).

5

be denied because Moser produced all electronically stored documents in fully searchable and sortable form and hard copy information in the manner for which it was kept during the usual course of business.

A party responding to discovery requests must either produce documents "as they are kept in the usual course of business" or "must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i). "This rule is intended to prevent parties from hiding 'a needle in a haystack' and to minimize the costs associated with discovery." *United States v. Bollinger Shipyards, Inc.*, No. 12-920, 2015 WL 13529562, at *3 (E.D. La. Apr. 13, 2015) (quoting *Hagemeyer N. Am., Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wisc. 2004)). A party asserting that documents are produced as kept in the usual course of business "must provide testimony, or some other evidence, to support their position." *Brown v. Bridges*, No. 3:12-cv-4947-P, 2014 WL 2210510, at *3 (N.D. Tex. May 27, 2014). Ideally, such evidence includes "the identity of the custodian or person from whom the documents were obtained, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered." *Bollinger*, 2015 WL 13529562, at *4 (citations omitted). Failure to meet this burden results in the responding party complying with the second option and properly organizing and labeling the documents. *Brown*, 2014 WL 2210510, at *3.

Regarding electronically stored information produced by Moser, the Court orders Moser, to the extent he has not already done so, to narrow the information produced to what is pertinent to Navistar's discovery requests. *See Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 510 (N.D. Tex. 2016) (holding that a responding party has the responsibility to provide a meaningful response and review voluminous documents to identify those that are responsive to specific

requests). Because Moser represents that such information is in searchable and sortable form, the Court finds that complying with such an order is not unduly burdensome.

Concerning the Dallas and Shreveport Boxes, Navistar contends that Moser making such boxes available for inspection rather than identifying the relevant contents and boxes is improper. Moser responds that he produced such boxes as they were kept in the usual course of business and that to require him to review every box to determine the relevancy of the information contained therein would be overly burdensome. Aside from stating that the boxes were kept by Tango in the manner that Moser produced them, Moser fails to provide any evidence to support the proposition that the boxes were produced as kept in the usual course of business. Consequently, Moser fails to satisfy his initial burden. *See Oceaneering Int'l, Inc. v. GRI Simulations, Inc.*, No. 05-0258, 2008 WL 11399724, at *2 (W.D. La. Jan. 23, 2008) ("simply producing documents in boxes does not conform to [Rule 34(b)(2)(E)(i)]"); *Brown*, 2014 WL 2210510, at *6 (the producing party has the burden of demonstrating that documents, albeit in storage, are produced in the ordinary course of business . . . that is, "Plaintiffs cannot simply open a warehouse door to a storage pile of unorganized documents"). As such, Moser must either satisfy this burden or organize and label the documents appropriately. If Moser satisfies his burden, he must also provide, to the extent he has not already, a general description of the filing system and indexes for the documents.

As trustee, Moser argues that requiring him to review every box would be unduly burdensome. The Court disagrees. Assuming Moser meets his burden of establishing that the boxes were produced as kept in the usual course of business, an index already exists for the Dallas Boxes, and Moser is currently creating an index for the Shreveport Boxes. As such, requiring Moser to provide a general description of the organization of the boxes and completed indexes is not unduly burdensome.

## II. Responding to Discovery as the Trustee

Navistar alleges that Moser avoids adequately responding to Navistar's discovery by claiming that he as trustee lacks "direct information" of Tango's business operations (Dkt. #58 at p. 5). Navistar avers that Moser's argument is untenable since Moser "has both the power and obligation to call upon Tango's knowledge to pursue his claims and to respond to discovery." (Dkt. #58 at p. 5). In other words, Navistar contends that Moser should have sought Tango's assistance in attempting to fully comply with his discovery obligations (Dkt. #58 at p. 7).

Moser responds that his objections based on his position as trustee are appropriate. Specifically, Moser asserts that he responded to Navistar's discovery to the best of his ability given his relative access to the relevant information and limited resources. For example, Moser represents that although Tango ceased operations prior to his appointment as trustee, he has nevertheless contacted former employees and counsel to try and obtain relevant and responsive information. Despite such efforts, Moser contends that his ability to draw upon Tango's institutional knowledge is limited.

Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the parties' relative access to relevant information" and "the parties' resources." FED. R. CIV. P. 26(b)(1). Although Navistar argues that Tango has an affirmative duty to cooperate with Moser for discovery purposes, the cases Navistar relies on are distinguishable from the case at hand since they involve Chapter 7, not Chapter 11 bankruptcy. Moreover, neither party cites to case law, and the Court finds none, where a court enforces such an obligation on the debtor in the context of a Chapter 11 bankruptcy. As such, the Court finds that Moser is only obligated to respond to Navistar's discovery to the extent that he has access to such information and in a manner

that does not overly diminish the limited resources of the trust. Moser represents that he contacted Tango's former employees and counsel in an effort to adequately respond to Navistar's counsel. The Court finds that such effort complies with Rule 26 and the circumstances of this case. However, the Court notes that Moser maintains the duty to supplement his discovery responses if he comes across new and relevant information.

### III. Moser's Responses to Navistar's Interrogatories

Navistar alleges that rather than respond substantively to its interrogatories, Moser "answered" with vague references to documents "previously produced" or claimed to lack direct knowledge to provide more responsive answers (Dkt. #58 at p. 12). Additionally, Navistar complains that Moser refused to respond to interrogatories 13 through 24 based on improper objections as to the number of interrogatories based on his calculation of subparts. As such, Navistar requests that the Court order Moser to specify which documents and/or information relate to each interrogatory and to provide responses to all interrogatories. Conversely, Moser claims that he adequately responded to Navistar's interrogatories by either "referring to the particular location of the information, or, where [he did] not have access to the information, stating so and referring Navistar to particular Tango employees who would likely have the information." (Dkt. #67 at pp. 13–14). Furthermore, Moser avers that he properly objected to and refused to respond to Navistar's excess interrogatories. The Court first addresses Moser's responses followed by the existence, if any, of excess interrogatories.

"Typically, responses to interrogatories must be complete in themselves." *F.T.C. v. Think All Pub., L.L.C.*, No. 4:07-cv-011, 2008 WL 687456, at *3 (E.D. Tex. Mar. 11, 2008) (citation omitted). However, Rule 33(d) provides that when a party serves an interrogatory "to another party which can be answered by examination of the responding party's business records, and the

9

burden of deriving the answer would be the same for both parties, it is sufficient to answer the interrogatory by specifying the business records from which the answer may be derived or ascertained." *Spectrum Creations, L.P. v. Carolyn Kinder Int'l, LLC*, No. SA-05-CV-750-XR, 2006 WL 8434013, at *1 (W.D. Tex. May 9, 2006) (citing FED. R. CIV. P. 33(d); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 357 (1978)). When this happens, "the responding party must specify the documents from which the answer may be derived in 'sufficient detail to [enable] the interrogating party to locate and to identify' them" as the responding party could. *Id.* (quoting FED. R. CIV. P. 33(d)).

In response to numerous interrogatories, Moser refers to various modules, sub-modules, and/or files located within Tango's operational system, which Moser contends Navistar has remote access to. *See* (Dkt. #58, Exhibit 8). Without determining the sufficiency of Moser's responses, the Court cautions Moser that the specified modules and files provided as answers to Navistar's interrogatories should provide a clear and easily traceable answer. Navistar "should not have to search and surmise from the specified documents the answers it seeks." *Spectrum*, 2006 WL 8434013, at *2. As such, Moser is ordered to review his responses and provide supplementation if such responses do not provide clear and straightforward direction to the answers sought.

The Court next addresses whether Navistar's interrogatories exceed the limitation imposed by Rule 33. Federal Rule of Civil Procedure 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." "Calculating the number of interrogatories . . . is not an exact science." *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.*, 315 F.R.D. 191, 194 (E.D. Tex. 2016). In expounding on the 25-interrogatory limit, the Advisory Committee Note provided, in pertinent part, that

[p]arties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

146 F.R.D. 401, 675–76 (1993). "When a multi-part interrogatory is challenged as being multiplicitous, the Court must decide what constitutes 'discrete separate subject.'" *Erfindergemeinschaft*, 315 F.R.D. at 194. Although there is no precise test for determining "discreteness" under a Rule 33(a)(1) inquiry, most courts follow the "related question" approach. *Id.* at 196. The test applied under the "related question" approach is "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories." *Id.* Stated differently, "where the first question can be answered fully and completely without answering the second question, then the second question is totally independent of the first and not factually subsumed within [it]." *Id.* (alteration in original) (citation omitted). Notably, "the issue of 'discreteness' cannot reliably be captured by a verbal formula," but instead "the issue turns on a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the interrogatory, as opposed to being separate and distinct." *Id.* at 197.

As discussed below, the Court finds that each of the complained-of interrogatories contain multiple parts and should be treated as separate interrogatories.

### a. Interrogatory No. 1

Concerning the allegations in the Tango Petition and the Amended Complaint relating to representations about the Subject Vehicles, please identify the person(s) who made said representations, detail the representation made, identify to whom the representation was directed, identify who relied on the representation, and detail when the representation was made. Also identify all materials that Tango reviewed concerning the Subject Vehicles that you allege Tango relied upon in deciding to purchase the Subject Vehicles, including a brief description of the contents of the material, location of the material, when the material was reviewed and by whom.

(Dkt. #58, Exhibit 6 at p. 4). This interrogatory contains two subparts: first, details surrounding representations relating to the subject vehicles, and second, materials Tango reviewed when considering whether to purchase the subject vehicles. The latter is neither subsumed nor dependent upon the former. As such, this interrogatory constitutes two interrogatories.

### b. Interrogatory No. 3

> Please describe the [disposition] of each Subject Vehicle, including the manner in which you or Tango parted with the Subject [Vehicle], the date of disposition, the amount or value received in the trade-in or sale (if applicable), the last known mileage at the time it left your or Tango's possession, the identity and [ ] location of the subsequent owner or possessor, and if known, the current status and location of the vehicle.

(Dkt. #58, Exhibit 6 at p. 4). This interrogatory contains two subparts: first, a description of the disposition of the subject vehicles, and second, the current status and location of the subject vehicles. Although each subpart relates to the subject vehicles, each can be answered independent of one another. As such, this interrogatory constitutes two interrogatories.

### c. Interrogatory No. 5

> Please describe any and all maintenance, servicing, and/or repairs performed by anyone (at Tango or elsewhere) on the Subject Vehicles at any time. This request calls, in part, for the identity of the individual/entity that performed the work, the approximate date or time period of the work, the identity of the vehicle at issue (by VIN or other identifier), the nature of the work performed, the cost of the work, and the identity of each person having any information or Material (including receipts, invoices, statements, records, memoranda) relating to the work.

(Dkt. #58, Exhibit 6 at p. 5). This interrogatory contains two subparts: first, a description of the maintenance, servicing, and/or repairs of the subject vehicles, and second, the identify of persons with information relating to such work. Although each are related, neither is dependent nor subsumed by the other. As such, this interrogatory constitutes two interrogatories.

### d. Interrogatory No. 6

> Please describe any and all maintenance, servicing, and/or repairs performed at any time by anyone (at Tango or elsewhere) on vehicles owned or leased by Tango <u>other than the Subject Vehicles</u>. This request calls, in part, for the identity of the individual/entity that performed the work, the approximate date or time period of the work, the identity of the vehicle at issue (by VIN or other identifier), the nature of the work performed, the cost of the work, and the identity of each person having any information or Material (including receipts, invoices, statements, records, memoranda) relating to the work.

(Dkt. #58, Exhibit 6 at p. 5) (emphasis in original). This interrogatory constitutes two interrogatories for the same reasoning applied to Interrogatory No. 5.

### e. Interrogatory No. 7

> Please describe Tango's internal policies, procedures, guidelines or practices related to the use, operation, maintenance, or servicing of any vehicle leased or owned by Tango, including Tango vehicles other than the Subject Vehicles. To the extent such information is memorialized, please identify the relevant Material.

(Dkt. #58, Exhibit 6 at p. 5). This interrogatory contains two subparts: first, a description of various materials related to numerous topics, and second, a request for any memorialized material concerning such information. The latter is neither subsumed nor dependent upon the former. As such, this interrogatory constitutes two interrogatories.

### f. Interrogatory No. 8

> Please describe any and all inspections or tests performed on each of the Subject Vehicles, including any component part thereof, whether prior to or after the purchase or lease of the Subject Vehicle, known to you or Tango or to persons acting on your or Tango's behalf, providing the identity of the person who performed the inspection/test, the approximate date each inspection/test was performed, the location of each inspection/test, the component parts that were inspected/tested, the conclusions reached, if any, at each inspection/testing, and a description of any Material created in connection with the inspection/testing.

(Dkt. #58, Exhibit 6 at pp. 5–6). This interrogatory contains two subparts: first, details concerning all inspections or tests performed on the subject vehicles, and second, a request for any

13

memorialized material concerning such information. Because each subpart is distinct and independent of one another, this interrogatory constitutes two interrogatories.

### g. Interrogatory No. 9

> Please describe all advertising performed by Tango or on Tango's behalf related to the hiring or retention of truck drivers from January 1, 2005, to the present. Your response should include a description of each advertisement, the duration (if applicable) of the advertisement, the cost of the advertisement, and the identity of any individuals/agencies involved in handling Tango's advertisements.

(Dkt. #58, Exhibit 6 at p. 6). This interrogatory contains two distinct and separate subparts. First, a request for a description of all advertising related to hiring or retention of truck drivers, and second, the identify of those involved with such advertisements. Because each subpart can be answered independent of one another, this interrogatory constitutes two interrogatories.

### h. Interrogatory No. 10

> Please list by name, address, phone number, and dates of employment all drivers employed by Tango from January 1, 2005, to the present. Please indicate the drivers who at any time operated any of the Subject Vehicles made the basis of this lawsuit and time period in which the driver identified operated each of the Subject Vehicles.

(Dkt. #58, Exhibit 6 at p. 6). This interrogatory contains two subparts: first, information relating to drivers employed by Tango during a specific time period, and second, the identities of drivers who operated the subject vehicles. Because each subpart is distinct and independent of one another, this interrogatory constitutes two interrogatories.

### i. Interrogatory No. 11

> For Tango's entire fleet of vehicles operated by Tango from January 1, 2005, until Tango ceased operations, describe the following:
>
> (a) the average percentage of vehicles in service at any given time;
>
> (b) the average maximum load (in pounds) that each vehicle was required to carry per day;
>
> (c) the average number of days per week that each vehicle was used by Tango

or in service to Tango in business or otherwise;

(d) the average number of miles per day that each vehicle traveled (or was required to travel);

(e) the average number of hours per day that each vehicle was used (or was required for use);

(f) the average number of vehicles that experienced down time at any given time;

(g) the average number of days each vehicle experienced downtime;

(h) the average number of repairs performed on each vehicle per year for the life of the vehicle;

(i) the number of drivers assigned to each vehicle;

(j) the number of vehicles down at any given time due to lack of drivers, lack of orders, and/or not required or needed by Tango in the ordinary course of business; and

(k) a description of any and all documents that were used or relied upon Plaintiff to answer this interrogatory.

(Dkt. #58, Exhibit 6 at pp. 6–7). This interrogatory contains four subparts: first, details relating to overall truck usage; second, information concerning the usage of specific trucks; third, data relating to the downtime of specific trucks; and fourth, a description of all materials relied upon to answer the aforementioned subparts. Because all subparts are distinct and independent of one another, this interrogatory constitutes four interrogatories.

### j. Interrogatory No. 12

Itemize with particularity, by date, amount and explanation, all "Break Down Expenses" as that term is used in Paragraphs 41-44 of the Amended Complaint. To the extent these expenses are supported by documentary evidence, please identify those documents by Bates Number.

(Dkt. #58, Exhibit 6 at p. 7). This interrogatory contains two subparts which are neither subsumed nor dependent upon one another. First, information relating to "Break Down Expenses," and

second, documentary evidence supporting such information. Although related, each is independent of the other. As such, this interrogatory constitutes two interrogatories.

### k. Interrogatory No. 13

> Please identify all customers and/or business you or Tango allege Tango lost based on alleged breakdowns or repairs to the Subject Vehicles, as alleged in Paragraph 45 of the Amended Complaint, and describe any valuation of the associated alleged economic loss. To the extent these claims of lost customers or business and any associated valuation are supported by documentary evidence, please identify those documents by Bates Number.

(Dkt. #58, Exhibit 6 at p. 7). This interrogatory contains four subparts: first, identification of customers and/or businesses lost based on alleged breakdowns or repairs; second, evidence supporting such response; third, the valuation of the associated alleged economic loss; and fourth, evidence supporting such economic loss. Although the subparts are related, neither is dependent nor subsumed by the other. As such, this interrogatory constitutes four interrogatories.

Taking into consideration the analysis above, Interrogatories No. 1 through the first subpart of No. 13 constitute twenty-five separate interrogatories. Moser only provided responses to interrogatories No. 1 through 12. Because a Navistar is entitled to twenty-five interrogatories, Moser must additionally provide a response to the first interrogatory/subpart within No. 13. However, Navistar's request that Moser respond to all of Navistar's originally classified twenty-four interrogatories is declined.

## CONCLUSION

It is therefore **ORDERED** that Navistar's Motion to Compel (Dkt. #58) is hereby **GRANTED in part**. As such, Moser is **ORDERED** to comply with the requirements as described herein no later than 5:00 p.m. on Friday, August 10, 2018.

**SIGNED this 27th day of July, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE