# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al.,

v.

NAVISTAR INTERNATIONAL CORPORATION, et al.

§
§
§
§
§
§
§
§
§
§

Civil Action No.  4:17-CV-00598
Judge Mazzant

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are the parties' letter briefs (Dkt. #162; Dkt. #169; Dkt. #171). Having considered the letter briefs and the relevant pleadings, the Court finds that the relief requested by Plaintiff Christopher Moser, as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC should be **GRANTED IN PART**.

## BACKGROUND

On November 26, 2018, the Court held a hearing on two issues raised by Plaintiff.  Both issues concern whether Defendants Navistar International Corporation, Navistar Inc., Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation (collectively, "Navistar") complied with one of the Court's July 27, 2018, orders (Dkt. #74).  The first issue concerns whether Navistar produced documents regarding Volkswagen's due diligence. The second issue is whether Navistar produced documents related to other settlements.  Unable to resolve the issues at the hearing, the Court ordered the parties to file letter briefs.   Plaintiff filed his sealed letter brief on December 4, 2018 (Dkt. #162).  Navistar filed its sealed letter brief in response on December 10, 2018 (Dkt. #169).  Plaintiff filed a sealed letter brief in reply on December 11, 2018 (Dkt. #171).

# ANALYSIS

### I. Volkswagen Due Diligence Documents

As detailed in the Court's previous Order, Volkswagen purchased an interest in Navistar in 2016 (Dkt. #74 at p. 5). Plaintiff sought "documents regarding Volkswagen's assessment of Navistar's litigation exposure related to EGR Defects." (Dkt. #49 at p. 11). The Court found that:

> such information is discoverable to a limited extent. Specifically, the Court limits the requested information to documents Navistar provided to Volkswagen in response to Volkswagen's due diligence concerning EGR Defects in MaxxForce Engines.

(Dkt. #74 at p. 6). The Court ordered Navistar to provide responsive documents covered by the Order by August 10, 2018 (Dkt. #74 at p. 7).

At the November 26 hearing and in Plaintiff's letter brief, Plaintiff alleges that Navistar provided no responsive documents to the Court's Order (Dkt. #162 at p. 1). Instead, Navistar responded to Plaintiff's request stating:

> Specifically, Navistar has conducted a search for discoverable documents, ***other than documents protected by the attorney-client privilege and/or work product doctrine***, which Navistar provided to Volkswagen in connection with due diligence performed by Volkswagen pertaining to alleged EGR Defects in MaxxForce Engines. At this time, Navistar has located no such documents . . . .

(Dkt. #162-2 at p. 8) (emphasis added). Plaintiff argues the documents withheld by Navistar are not subject to attorney-client privilege or the work product doctrine and, therefore, must be produced (Dkt. #162 at pp. 2–4).

Navistar provided the withheld documents to the Court for *in camera* review and asserts a number of arguments in response to Plaintiff's letter brief. First, Navistar contends that Plaintiff seeks irrelevant information, which is not constrained to a reasonable time, and that Plaintiff has also withheld documents through similar assertions of privilege (Dkt. #169 at pp. 2–3). These

arguments miss the mark. As noted above, the Court ordered Navistar to produce documents covered by its Order. Therefore, Navistar's relevancy and overbreadth arguments are misplaced. Additionally, whether Plaintiff has asserted similar privilege arguments concerning other documents or testimony is not relevant to whether Navistar must comply with the Court's previous Order.

Navistar also argues that the withheld documents are not responsive to Plaintiff's request or the Court's Order. The Court disagrees. The documents at issue are letters written by Navistar's counsel to KPMG, LLP ("KPMG") concerning an internal audit. The letters specifically detail the attorneys' summaries, and in some cases assessments, of ongoing litigation related to EGR Defects in MaxxForce Engines. According to Navistar's response to Plaintiff's discovery request, Navistar provided these documents to Volkswagen in connection with due diligence performed by Volkswagen pertaining to alleged EGR Defects in MaxxForce Engines (Dkt. #162-2 at p. 8). Therefore, these documents are covered by the Court's Order to disclose all documents "Navistar provided to Volkswagen in response to Volkswagen's due diligence concerning EGR Defects in MaxxForce Engines." As the documents are subject to the Court's Order, Navistar must produce the documents unless they are protected from disclosure by the attorney-client privilege or work product doctrine.

### A. Attorney-Client Privilege

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). "A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Instead, "[t]he proponent must provide sufficient facts by

way of detailed affidavits or other evidence to enable the court to determine whether the privilege

exists." *Id.*

> Under federal law, the elements of the attorney-client privilege are "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (quoting *In re Grand Jury*

*Proceedings*, 517 F.2d 666, 670 (5th Cir.1975)). "Although disclosure to a third-party normally

waives the [attorney-client] privilege, the privileged communication is not waived, however, if it

is shared with a third person who has a common legal interest with respect to the subject matter of

the communication." *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2:07-CV-565-TJW-CE, 2011 WL

1714304, at *4 (E.D. Tex. May 4, 2011) (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th

Cir. 1997)). The "common interest privilege" protects two types of communications: "(1)

communications between co-defendants in actual litigation and their counsel; and (2)

communications between potential co-defendants and their counsel." *United States v. Homeward*

*Residential, Inc.*, 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) (quoting

*Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003)).

Although Navistar mentions the attorney-client privilege in its letter brief, Navistar focuses

its arguments on the work product doctrine (Dkt. #169 at p. 5). Even so, the Court finds the

documents are not protected by the attorney-client privilege. First, Navistar does not explain why

its disclosure of the documents to a third-party does not waive the attorney-client privilege, besides

stating that its nondisclosure agreement ("NDA") with Volkswagen preserves attorney-client privilege. Therefore, the Court cannot determine whether the common interest privilege protects the communications between Navistar and Volkswagen.

However, assuming there is a common legal interest between Navistar and Volkswagen, the attorney-client privilege cannot protect the documents at issue. This Court has previously addressed the issue of whether the attorney-client privilege applies to documents disclosed by attorneys to accountants. *Ferko*, 219 F.R.D. at 134–35. The Court found, "an attorney claiming the attorney-client privilege for communications between an attorney and an accountant or for documents prepared by an accountant for an attorney must prove that the accounting services enabled the giving of legal advice." *Id.* at 135 (citing *United States v. Davis*, 636 F.2d 1028, 1043 n.17 (5th Cir. Unit A Feb. 1981); *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976)). Instead, in the instant case, Navistar's attorneys provided information to KPMG concerning ongoing and threatened litigation for an audit. In other words, the accounting services provided in this case enabled the giving of accounting advice, not legal advice. Therefore, the Court finds that the attorney-client privilege does not apply to the documents produced *in camera* for the Court's review.

### B. Work-Product Doctrine

"The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation." *Dufrene v. Am. Tugs, Inc.*, CV 18-554, 2018 WL 6448838, at *6 (E.D. La. Dec. 10, 2018) (citations omitted); *accord Orchestrate HR, Inc. v. Trombetta*, 3:13-CV-2110-P, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014); *Burroughs Diesel, Inc. v. Baker Petrolite, LLC*, 2:18-CV-26-KS-MTP, 2018 WL 6517454,

at *3 (S.D. Miss. Dec. 11, 2018) (citation omitted).  The Fifth Circuit has described the standard

for determining whether a document has been prepared in anticipation of litigation:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine.  We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in the possible future litigation.

*Davis*, 636 F.2d at 1040 (citations omitted).  "Among the factors relevant to determining the

primary motivation for creating a document are 'the retention of counsel and his involvement in

the generation of the document and whether it was a routine practice to prepare that type of

document or whether the document was instead prepared in response to a particular

circumstance.'"  *Navigant Consulting, Inc.*, 220 F.R.D. at 477 (quoting *Elec. Data Sys. Corp. v.*

*Steingraber*, 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003)).  If the document

would have been created without regard to whether litigation was expected, it was made in the

ordinary course of business and is not protected by the work product doctrine.  *Id.*  The work

product doctrine is not "an umbrella that shades all materials prepared by a lawyer, or agent of the

client[,]" and the doctrine excludes materials assembled in the ordinary course of business.

*Homeward Residential, Inc.*, 2016 WL 1031154, at *3 (citing *Elec. Data Sys. Corp.*, 2003 WL

21653414, at *4).

Navistar does not demonstrate that the documents at issue were prepared in anticipation of

litigation.  As noted in Navistar's letter brief, and as clear from the Court's review of the

documents, the documents were created for an audit conducted by KPMG in 2016 (Dkt. #169 at

p. 5).  Therefore, although the documents may contain summaries of litigation prepared by

attorneys for Navistar, the primary purpose behind the creation of the documents was not to aid in

possible future litigation, but to aid KPMG in conducting the audit. Therefore, Navistar does not

demonstrate that the protection of the work-product doctrine applies to the documents.[1]

As the Court finds the documents produced by Navistar for *in camera* review responsive

to Plaintiff's request and covered by the Court's previous Order, and neither privilege asserted

protects the documents from production, the Court **ORDERS** Navistar to produce the documents

submitted to the Court for *in camera* review to Plaintiff within **three (3) days** of this Order.

## II. Other Settlement Documents

In its previous Order, the Court explained that Plaintiff seeks production of documents

relating to prior settlements regarding EGR Defects (Dkt. #74 at p. 5). The Court found that

Plaintiff's requested information was discoverable to a limited extent:

> Specifically, the Court limits the requests to all documents, including communications, concerning settlement and potential settlement between Navistar and entities that purchased and/or leased 400 or more trucks containing MaxxForce Engines from 2009 through 2014 resolving claims or potential claims concerning EGR Defects in MaxxForce Engines. Further, such production includes, but is not limited to, complaints, demand letters, and documents identifying the material terms of the pertinent settlement agreements.

(Dkt. #74 at p. 4).

In response to the Court's Order, Navistar produced one document (Dkt. #162 at p. 4).

Believing something was amiss, Plaintiff subpoenaed Navistar's largest customers for the

following information:

---

1. Navistar argues that its NDA with Volkswagen maintained all privileges and confidentiality pertaining to the documents (Dkt. #169 at p. 5). This Court has stated that "at least one court in this district has held that the presence of a written nondisclosure agreement preserves work product protection." *Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (citing *Mondis Tech., Ltd.*, 2011 WL 1714304, at *3). However, for an NDA to preserve work product protection, the documents at issue must first be subject to the work product doctrine. Here, Navistar does not show that the documents are subject to the work product doctrine and, therefore, the NDA cannot preserve any work product protection. *See id.* (finding the documents at issue were protected by the work product doctrine, before determining "the disclosures did not constitute a waiver [of the work product doctrine] because they were disclosed subject to non-disclosure agreements . . . .").

> Documents reflecting the material terms of any agreements,
> compromises, resolutions, settlements, or other business
> arrangements between You and Navistar and/or Navistar Dealers
> resolving complaints, claims or potential claims concerning
> MaxxForce Engines in Your fleet.

(Dkt. #162 at p. 4). At least one customer responded by producing nearly 200 pages of documents

(Dkt. #162 at p. 4). Based on this evidence and the deposition testimony of Navistar's former

Senior Vice President of Sales, Plaintiff contends that Navistar artificially limited their search in

response to the Court's Order. In essence, Plaintiff argues that Navistar searched for only formal

settlements when, in reality, Navistar "settled" customer complaints by offering "deals, discounts,

and 'goodwill' credits to make up for the problems the customers encountered with the MaxxForce

engines at issue in this litigation." (Dkt. #162 at p. 7).

Navistar responds by explaining that they fully complied with the Court's Order and

conducted a thorough search for responsive documents (Dkt. #169 at pp. 6–7). Navistar explains

that Plaintiff expanded its inquiry beyond the original requests for production and the Court's

Order (Dkt. #169 at p. 7). In other words, Navistar argues that the deals, discounts, and goodwill

credits sought by Plaintiff are not settlements as defined by the Court's previous Order. Navistar

contends, "[t]he salespeople at Navistar . . . were free to negotiate with potential customers on

price, trade-in and warranty allowances. If this was done to pacify a customer with MaxxForce

engines, it would be essentially impossible to ascertain that and produce responsive documents."

(Dkt. #169 at p. 7).

The Court disagrees with Navistar and finds that the business arrangements cited by

Plaintiff could be considered settlements of potential claims by Navistar. Navistar's former Senior

Vice President of Sales explained in his deposition:

> Q. BY MR. KING: Do you know of any settlements that Navistar
> has reached to resolve claims regarding damage to the trucking

8

companies caused by defective engines where the customers purchased 100 trucks or more?

[Objection]

THE WITNESS: Yeah. This goes beyond – I have signed certain confidentiality agreements that would prohibit me from answering some of these questions. Not with Navistar; with the customers.

. . . .

Q. BY MR. KING: Did Navistar enter into settlement agreements with customers other than Ryder, Conway, JB Hunt, Heartland, and Tango?

MR. WILLIAMS: Object to the form.

THE WITNESS: In most cases, with rare exception, most of what I would have been involved with, again, with—excluding certain rare exceptions, ***anything that was done to settle disputes was done through truck transactions***.

Q. BY MR. KING: Define truck transactions.

A. By over-allowance in new truck deals to either overinflate the value of their trucks to compensate for expenses or overinflate the value of their traded trucks to compensate for named issues, the cash deals they were going to have to deal with to either pay off expenses, reimbursement of drivers for down times, et cetera.

(Dkt. #162-6 at p. 4) (emphasis added). Based on this testimony, the Court finds such arrangements could qualify as settlements under the Court's previous Order.

Additionally, the Court finds such arrangements relevant and discoverable. In Plaintiff's original motion—which led to the Court's previous Order—Plaintiff explained:

> The Trustee has alleged that Tango brought EGR Defect claims in Louisiana state court against Navistar and released those claims in the Settlement Agreement. The Trustee further alleges that Tango did not receive reasonably equivalent value for its release of its claims. Indeed, this issue—whether Tango received reasonably equivalent value in the Settlement Agreement—is the critical issue in this case.

(Dkt. #40 at pp. 3–4) (citations omitted). The business arrangements described by Navistar's Former Senior Vice President of Sales could demonstrate how Navistar valued claims related to EGR Defects in MaxxForce Engines and are therefore relevant.

However, the Court notes Navistar's argument concerning how burdensome such discovery could become. Therefore, the Court will limit the scope of discovery of these arrangements to the same limit as its previous Order. As a result, the Court **ORDERS** Navistar to produce all documents and communications concerning deals, discounts, transactions, goodwill credits, and other such business arrangements between Navistar and entities that purchased and/or leased 400 or more truck containing MaxxForce Engines from 2009 through 2014 that were offered to these customers as a result of complaints, disputes, or potential lawsuits concerning EGR Defects in MaxxForce Engines within **thirty (30) days** of this Order.

## CONCLUSION

After considering the parties' letter briefs the Court:

- **ORDERS** Navistar to produce the documents submitted to the Court for *in camera* review to Plaintiff within **three (3) days** of this Order;

- **ORDERS** Navistar to produce all documents and communications concerning deals, discounts, transactions, goodwill credits, and other such business arrangements between Navistar and entities that purchased and/or leased 400 or more truck containing MaxxForce Engines from 2009 through 2014 that were offered to these customers as a result of complaints, disputes, or potential lawsuits concerning EGR Defects in MaxxForce Engines within **thirty (30) days** of this Order.

**IT IS SO ORDERED.**

 **SIGNED this 16th day of January, 2019.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE