# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al., | § § § § | |
| v. | § § § | Civil Action No. 4:17-CV-00598 Judge Mazzant |
| NAVISTAR INTERNATIONAL CORPORATION, et al. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Navistar International Corporation, Navistar Inc., Navistar Leasing Company ("NLC"), Navistar Financial Corporation, and Navistar Leasing Services Corporation's ("Navistar Entities") Motion to Claw-Back Privileged Document (Dkt. #61). Having considered the motion and the relevant pleadings, the Court finds the motion should be **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

In 2014, the parties engaged in litigation in Louisiana State Court. Defendants (including ITA Truck Sales & Service, LLC) and Tango Transport, LLC, Tango Logistx, LLC, Gorman Group, Inc., Tango Truck Services, LLC, Tango Enterprises, Inc., and GMGO, LLC (collectively, "Tango Entities") entered into a settlement agreement (the "Settlement Agreement") in August 2015 to resolve the Louisiana litigation (Dkt. #61 ¶ 9). Accompanying the Settlement Agreement, the parties signed an Agreement to Reinstate and Amend Leases and a Retail Loan Modification Agreement (Dkt. #61 ¶ 10). After the parties signed the Settlement Agreement, Lease Reinstatement, and Loan Modification, but before the dismissal of the Louisiana litigation, the

Tango Entities advised Defendants that they would be unable to make the payments required by the Lease Reinstatement and Loan Modification agreements (Dkt. #61 ¶ 11).

On September 3, 2015, Jamila Covington, in-house counsel for Defendants, sent an email to Bartley Bourgeois, outside counsel for Defendants, Richard Bond, Covington's Supervisor, and Kathleen Reed, Covington's paralegal (the "Covington Email") (Dkt. #61 ¶¶ 3, 13). Filed under seal, the Covington Email generally includes: (1) Covington informing Bourgeois that "Tango" will not be able to make the increased payments and (2) Covington's assessment of what Defendants' next steps could be (Dkt. #61-1 at pp. 3–4).

On December 23, 2015, NLC filed suit against the Tango Entities and others. *Navistar Leasing Company v. Tango Transport LLC, et al.*, 4:15-CV-00866-ALM (Dkt. #1) (E.D. Tex.). In this suit, NLC produced documents Bates numbered Navistar 000001–004106 (Dkt. #61 ¶ 2). Included in this production of documents was the Covington Email (Dkt. #61 ¶ 3). The Court abated the December 2015 suit on January 10, 2017, pending the outcome of this case. *Navistar Leasing Company*, 4:15-CV-00866-ALM (Dkt. #95).

In this case, Plaintiff Christopher Moser ("Trustee"), as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of the Tango Entities, seeks to avoid the Settlement Agreement as a constructively fraudulent transfer under 11 U.S.C. §§ 544 and 548. As part of the Initial Disclosures made in this case, Defendants produced the same Bates-numbered documents from the First Suit—including the Covington Email—to the Trustee. After receiving the Covington Email, the Trustee served Requests for Admission on Defendants relating to the Covington Email (Dkt. #61-2; Dkt. #61-6). After receiving the Requests for Admission, Defense Counsel informed Trustee's Counsel that Defendants intended to claw-back the Covington Email (Dkt. #61-4).

Defendants filed their Motion to Claw-Back Privileged Document on June 22, 2018 (Dkt. #61). Defendants seek to claw-back a portion of the Covington Email on the grounds that the portion is protected by the attorney-client privilege. Defendants also assert they produced the Covington Email inadvertently (Dkt. #61 ¶ 1). The Trustee filed a response in opposition to the motion on July 2, 2018 (Dkt. #65). Defendants filed a reply in support of the motion on July 9, 2018 (Dkt. #69).

## LEGAL STANDARD

### I. Rule 502(b)

Federal Rule of Evidence 502 applies to disclosure of a communication or information covered by the attorney-client privilege. Generally, Rule 502(b)(3) and Federal Rule of Civil Procedure 26(b)(5)(B) govern a parties' attempt to retrieve inadvertently disclosed communications or information. However, parties may enter into "claw-back" arrangements that differ from the procedure provided by Rule 26(b)(5)(B). *See* FED. R. EVID. 502 advisory committee's note to 2006 amendment. Additionally, courts may enter orders governing inadvertent disclosures that replace the procedures of Rule 26(b)(5)(B). *See* FED. R. EVID. 502(e). In this case, the parties requested, and the Court entered, a Stipulated Protective Order (Dkt. #14). The Protective Order governs inadvertent disclosures of privileged information related to this litigation:

> Inadvertent or unintentional production of documents or information containing information that should have been designated as privileged shall not be deemed a waiver in whole or in part of the Party's claims of privilege. Pursuant to Fed. R. Evid. 502(b)-(d), if a Party has inadvertently or unintentionally produced information subject to a claim of immunity or privilege, upon written request made by the producing Party within twenty-one (21) days of discovery, all copies of such information shall be returned to the producing Party within seven (7) days of such request unless the receiving Party intends to challenge the producing Party's

3

> assertion of privilege or immunity. If a receiving Party objects to the return of such information within the seven (7) day period described above, the producing Party may move the Court for an order compelling the return of such information. Pending the Court's ruling, a receiving Party may retain the inadvertently or unintentionally produced documents in a sealed envelope and shall not make any use of such information.

(Dkt. #14 ¶ 10, c).

## II. Attorney-Client Privilege

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). "A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004). Instead, "[t]he proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.* "Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions." *Perkins v. Gregg Cty.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995) (citation omitted)

"'The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client.'" *Moore v. City of Seagraves*, 5:12-CV-164-C, 2013 WL 12101085, at *1 (N.D. Tex. Mar. 8, 2013) (quoting *United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D. Tex. 1993)). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "For a

4

communication to be protected under the privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'" *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, CV 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018) (quoting *Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985)). "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'appl[y] only where necessary to achieve its purpose.'" *BDO USA, L.L.P.*, 876 F.3d at 695 (alterations in original) (quoting *Robinson*, 121 F.3d at 974). Further, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ." *Upjohn*, 449 U.S. at 395.

In *Stoffels*, the court described the application of the attorney-client privilege to in-house counsel:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of predominantly legal advice or services to the client.

*Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (citations omitted).

## ANALYSIS

Defendants move the Court to order the return of a portion of the Covington Email (Dkt. #61). The party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability. *In re Santa Fe Int'l Corp.*, 272 F.3d at 710. Defendants contend the Covington Email is privileged under the attorney-client privilege (Dkt. #61 ¶ 15). Specifically, Defendants argue:

> The Covington Aff[idavit] establishes that the Disputed E-mail is privileged. The Disputed E-mail was sent by in house counsel to other members of her legal team for purposes of rendering legal advice and discussing legal strategies with respect to an existing and potentially new lawsuit. One can scarcely conceive an attorney-client communication that falls more within the Fifth Circuit definition of attorney-client privilege.

(Dkt. #61 ¶ 15). Defendants also contend, "an objective reading of the Disputed E-mail confirms that in it, Ms. Covington is giving legal advice." (Dkt. #69 ¶ 4).

As cited, Defendants' argument rests on the text of the Covington Email and Covington's affidavit. "For a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *BDO USA, L.L.P.*, 876 F.3d at 695 (quoting *Robinson*, 121 F.3d at 974). "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'" *O'Malley*, 2018 WL 814190, at *2 (quoting *Hodges, Grant & Kaufmann*, 768 F.2d at 721).

In her affidavit, Covington testifies that in her position she acted as an attorney for Defendants (Dkt. #61-3 ¶ 3). Covington explains that the primary purpose of the email was to

discuss legal advice and strategy for her client, and she intended the email to be confidential (Dkt. #61-3 ¶¶ 9–10).

The Trustee argues the Covington Email is not privileged because the email contains information concerning purely business decisions and does not indicate that any legal advice was sought (Dkt. #65 at pp. 8–11). The Trustee provides a sentence-by-sentence review of the Covington Email to show the email is not privileged.

Concerning the first paragraph of the disputed portion of the Covington Email, the attorney-client privilege does not apply (Dkt. #61-1 at p. 3). Covington explains in these sentences that "Tango" informed the Navistar Entities that it would not be able to make the increased payments required under the Lease and Loan Modification. Covington then states she attended a meeting with Bill McMenamin, George Jones, and Stephanie Jones to discuss how to respond to Tango's revelation.[1] Neither statement tends to disclose Defendants' confidential communications or contains legal advice and is, therefore, not privileged. *See O'Malley*, 2018 WL 814190, at *2.

However, the attorney-client privilege applies to the next two paragraphs of the Covington Email. In these paragraphs, Covington summarizes the meeting with McMenamin, George Jones, and Stephanie Jones and provides an assessment of the Navistar Entities' legal options and current legal position. These paragraphs are directed to Covington's Supervisor and outside counsel. In other words, this portion of the email shows an attorney discussing confidential-client information regarding potential legal strategy. Therefore, the Court finds this communication privileged as it "facilitated the rendition of predominantly legal advice or services" to Defendants. *Stoffels*, 263 F.R.D. at 411.

---

1. McMenamin and George Jones are Directors for Navistar Financial Corporation, and Stephanie Jones is a Portfolio Management Supervisor for Navistar Financial Corporation (Dkt. #61 ¶ 12).

The Trustee suggests these two paragraphs are not privileged because Covington's advice is not thorough and Covington's statements concern business decisions.[2] The Court disagrees. No part of the attorney-client privilege requires an attorney's advice to be thorough. Further, as the attorneys in this case certainly know, legal advice often entails an explanation by the attorney of a client's current legal position, the client's potential options, and an explanation of the time and money required to exercise these options. The Court believes the middle two paragraphs of the disputed portion of the Covington Email are an example of this type of advice. Covington explains that her client's legal options boil down to the money and time her client is willing to expend. Additionally, Covington provides a general assessment of her client's current legal situation and states what option her client will likely pursue.

The final one-sentence paragraph of the disputed portion of the Covington email is not privileged. In this sentence, Covington explains that she sent the email so her supervisor and outside counsel would be on the same page.

The Trustee next argues that even if the Covington Email is privileged, Defendants waived the privilege through disclosure (Dkt. #65 at pp. 12–15). Citing Rule 502(b), the Trustee contends Defendants did not take reasonable steps to prevent the disclosure of the Covington Email. Specifically, the Trustee notes that Defendants produced the email twice, once in this litigation and once in previous litigation. The Trustee also states that the affidavit provided by Defense Counsel describing the process taken to prevent the inadvertent disclosure of privileged information is insufficient.

The Stipulated Protective Order describes the process of waiver and claw-back in this litigation:

---

2. For example, the Trustee explains, "Ms. Covington does not offer any analysis or opinion as to Navistar's rights." (Dkt. #65 at p. 11).

8

> Inadvertent or unintentional production of documents or information containing information that should have been designated as privileged *shall not be deemed a waiver in whole or in part of the Party's claims of privilege*. Pursuant to Fed. R. Evid. 502(b)-(d), if a Party has inadvertently or unintentionally produced information subject to a claim of immunity or privilege, *upon written request made by the producing Party within twenty-one (21) days of discovery*, all copies of such information shall be returned to the producing Party within seven (7) days of such request unless the receiving Party intends to challenge the producing Party's assertion of privilege or immunity. If a receiving Party objects to the return of such information within the seven (7) day period described above, the producing Party may move the Court for an order compelling the return of such information. Pending the Court's ruling, a receiving Party may retain the inadvertently or unintentionally produced documents in a sealed envelope and shall not make any use of such information.

(Dkt. #14 ¶ 10, c) (emphasis added). Defense Counsel made a written request within three hours of discovering the inadvertent disclosure of the Covington Email and, therefore, Defendants did not waive any privilege claim (Dkt. #65-1). Additionally, the Court finds Defendants adequately describe the process for reviewing privileged documents (*See* Dkt. #61-4).

## CONCLUSION

It is therefore ordered that Defendants' Motion to Claw-Back Privileged Document is **GRANTED IN PART** and **DENIED IN PART** (Dkt. #61). The Court **ORDERS** the Trustee to return the Covington Email, along with any and all copies of the email, to Defendants with **three (3) days** of this order. The Court further **ORDERS** Defendants to produce to the Trustee within **three (3) days** of this order a redacted version of the Covington Email. Defendants may redact any portion of the second and third paragraphs of the highlighted section of the Covington Email attached to Defendants' Motion—as the paragraphs are privileged.

**IT IS SO ORDERED.**
**SIGNED this 4th day of February, 2019.**

9

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE