# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al., <br><br> v. <br><br> NAVISTAR INTERNATIONAL CORPORATION, et al. | § § § § § § § § § § § Civil Action No. 4:17-CV-00598 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Navistar International Corporation, Navistar Inc., Navistar Leasing Company, Navistar Financial Corporation, Navistar Leasing Services Corporation, and ITA Truck Sales & Services, LLC's Motion for Partial Summary Judgment (Dkt. #37). Having considered the motion and the relevant pleadings, the Court finds the motion should be denied.

## BACKGROUND

In October 2014, Tango Transport, LLC; Tango Logistx, LLC; Gorman Group, Inc.; Tango Truck Services, LLC; Tango Enterprises, Inc.; and GMGO, LLC (collectively, "Tango") sued Defendants in Louisiana state court (Dkt. #37 at p. 3; Dkt. #37-1). Defendants filed Exceptions to Tango's state-court claims (Dkt. #37 at p. 3). However, before the state court heard Defendants' Exceptions, the parties executed a Receipt, Release, and Settlement of all Claims and Indemnity Agreement ("Settlement Agreement") (Dkt. #37 at p. 3; Dkt. #39). Pursuant to the Settlement Agreement, Tango filed a Motion to Dismiss Suit with Prejudice (Dkt. #37-3; Dkt. #39 at p. 7; Dkt. #40 at p. 3). In a one-sentence order, the state court granted Tango's motion and dismissed the case with prejudice on September 22, 2015 ("Dismissal Order") (Dkt. #37-4).

On April 6, 2016, Tango filed a Chapter 11 Voluntary Petition for Bankruptcy. *In re Tango Transport, LLC*, 16-40642 (Bankr. E.D. Tex.). On November 18, 2016, Christopher Moser ("Trustee"), as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango, filed this adversary proceeding. *Tango Transport, LLC v. Navistar Int'l Corp. (In re Tango Transport, LLC)*, 16-04109 (Bankr. E.D. Tex.). On December 19, 2017, this Court, adopting the Report and Recommendation of the United States Bankruptcy Judge, withdrew the reference of the adversary proceeding to the Bankruptcy Court (Dkt. #3).

In this proceeding, the Trustee seeks to avoid the Settlement Agreement under 11 U.S.C. §§ 544(b)(1), 548, and 550. *See Tango Transport, LLC*, 16-04109, (Dkt. #34). On April 11, 2018, Defendants filed their Motion for Partial Summary Judgment (Dkt. #37). On April 30, 2018, the Trustee filed a response to the motion (Dkt. #40). On May 7, 2018, Defendants filed a reply in support of the motion (Dkt. #41).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

ANALYSIS

Defendants move for summary judgment on the Trustee's 11 U.S.C. §§ 544 and 548 claims (Dkt. #37). Specifically, Defendants contend the Fifth Circuit's holding in *Besing* mandates summary judgment on the Trustee's claims as a matter of law (Dkt. #37) (referencing *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488 (5th Cir. 1993)).

To succeed on a constructive fraudulent transfer claim under § 548, the Trustee must show that the debtors "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B). In *Besing,* the Fifth Circuit considered whether a Texas state court's judgment constituted a transfer for reasonably equivalent value as a matter of law. *See* 981 F.2d at 1496.

I. *Besing*

Before bankruptcy, the debtors in *Besing* sued Hawthorne in Texas state court seeking specific performance of an alleged settlement agreement or damages for breach of the agreement. *Id.* at 1490. Hawthorne filed a counterclaim seeking a declaratory judgment and sought the recovery of several business debts. *Id.* As a result of a discovery abuse, the state court entered a sanction order striking the debtors' pleadings and dismissing with prejudice their claims for affirmative recovery. *Id.* Shortly thereafter, the state court entered a final judgment in favor of Hawthorne. *Id.*

Subsequently, the debtors filed petitions for relief under Chapter 11. *Id.* at 1490–91. In an adversary proceeding, the debtors attempted to avoid the state-court judgment under § 548 arguing the judgment constituted a transfer of their claims for which they received no value. *Id.* at 1491. After a short trial, the bankruptcy court concluded that the state-court judgment did not constitute a transfer within the meaning of § 548. *Id.* The district court affirmed the bankruptcy court's

decision, and the debtors appealed to the Fifth Circuit. *Id.* The Fifth Circuit concluded that the bankruptcy court erred in concluding that the state-court judgment had not effected a "transfer" of the debtors' claims within the meaning of § 548. *Id.* at 1494. However, the Fifth Circuit affirmed the bankruptcy court's decision on other grounds. *Id.* at 1494–96. The Fifth Circuit held, as a matter of law, that the Texas state court's striking of the debtors' claims constituted a transfer for "reasonably equivalent value." *Id.* at 1496. Therefore, because the debtors could not establish that they received less than the reasonably equivalent value from the "transfer" of their claims, the bankruptcy court properly dismissed the debtors' § 548 avoidance claims. *Id.*

Two considerations underpin the holding in *Besing*. First, under Texas law, the dismissal of the debtors' claims by the state court was an adjudication on the merits of the debtors' claims. *Id.* (citations omitted). The Court declined the debtors' invitation to "look behind" the state-court judgment and found instead, "[t]he judgment conclusively established that the Debtors' claims against Hawthorne had no merit." *Id.* (citation omitted).[1] Second, the Court grounded its decision in the Full Faith and Credit Act, 28 U.S.C. § 1738, stating "'The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment . . . .'" *Id.* (quoting *G & R Mfg. Co., Inc., v. Gunia (In re G & R Mfg. Co., Inc.)*, 91 B.R. 991, 994 (Bankr. M.D. Fla. 1988)).

The Fifth Circuit also limited the extent of its holding in *Besing*. The Court first emphasized the decision addressed "only the disposition of state law claims by a state tribunal" and did not limit "the well-established rule that other transfers of property may be subject to avoidance under the provisions of the Bankruptcy Code." *Id.* Second, the holding did not address

---

1. The debtors argued the claims were not adjudicated on the merits because the dismissal resulted from a sanction order. *Besing*, 981 F.2d at 1496 n.15. The Court disagreed quoting Texas law, "'a party's hindrance of the discovery process justified a presumption that its claims or defenses lack merit.'" *Id.* (quoting *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991)).

5

the issue of claims lost or forfeited by a debtor asserting an actual, as opposed to constructive, fraudulent transfer under § 548(a)(1). *Id.*

II. **Motion for Partial Summary Judgment**

Defendants argue the Dismissal Order operates like the Texas sanction order and judgment in *Besing* (Dkt. #37; Dkt. #41). Defendants contend that as a matter of law, the Court must enter partial summary judgment because the Dismissal Order was an adjudication on the merits of the Trustee's state-law claims (Dkt. #37 at p. 5). Therefore, Defendants claim the Trustee cannot prove that the debtors received less than reasonably equivalent value for their claims under § 548 (Dkt. #37 at p. 5). The Court disagrees as *Besing* is distinguishable from this case.

A. **The Transfer**

Section 548(a) enables a Trustee to avoid a transfer if certain factors are met. The transfer the Trustee seeks to avoid in this case is the Settlement Agreement, not the Dismissal Order. *See Tango Transport, LLC*, 16-04109 (Dkt. #34). The opposite occurred in *Besing*, where the debtors sought to avoid the state court's sanction order and subsequent judgment. 981 F.2d at 1490.

Defendants contend the Trustee cannot seek to avoid the Settlement Agreement without avoiding the Dismissal Order:

> The Trustee argues that the relief he now seeks is solely limited to unwinding the Settlement Agreement. In so doing, the Trustee asks this Court to ignore the Dismissal Order and its binding legal effect. First, the Settlement Agreement and the Dismissal Order are intertwined. Second, if only the Settlement Agreement was set aside, the Dismissal Order would prevent prosecution of the State Court Claims anew. And if the Trustee were to alternatively receive the value of the State Court Claims under Bankruptcy Code § 550, such claims would be worthless because those claims were previously and finally adjudicated. The only way the State Court Claims or the value thereof could be worth anything to the Trustee is if this Court were to overturn the Louisiana state court's final order of dismissal with prejudice, which would equate to using Bankruptcy Code § 548 to circumvent state law.

(Dkt. #41 at p. 2).

Defendants wrongfully attempt to immunize the Settlement Agreement from attack as a fraudulent transfer through the subsequent, uncontested Dismissal Order. The Court finds persuasive the reasoning in *Wolf*. *Osherow v. Wolf (In re Wolf)*, 15-31477-HCM, 2016 WL 4940198, at *1 (Bankr. W.D. Tex. Sept. 15, 2016), *aff'd*, 697 F. App'x. 317 (5th Cir. 2017). In *Wolf*, Abie transferred real property to Rema. *Id.* at *38. A later divorce decree awarded at least some of the previously transferred real property to Rema. *Id.* In a subsequent adversary proceeding, the trustee sought to avoid and recover the transfers of the real property under §§ 548(a)(1)(A), 548(a)(1)(B), and 550. *Id.* at *2. Rema argued the award of the properties by the state court in the divorce decree was entitled to preclusive effect, and could not be collaterally attacked by the Trustee as a fraudulent transfer. *Id.* at *38. The court, citing *Erlewine*—a Fifth Circuit opinion considering *Besing* in the context of a divorce decree—separated the transfer of the properties from the divorce decree:

> [I]n *Erlewine*, the bankruptcy trustee was directly challenging the award of the debtor's property in a divorce decree as the fraudulent "transfer" to be avoided. The debtor in *Erlewine* did not make a transfer of property to the former spouse before the award and division of property in the divorce decree. Here, Abie voluntarily transferred the Subject Properties to Rema by deeds before the Divorce Decree was entered and before the Divorce Proceeding was even filed by Rema. The Subject Properties were transferred by Abie to Rema through deeds signed by Abie and recorded in February and March 2014—before the Divorce Decree was entered in September 2014 and even before the Divorce Proceeding was filed by Rema in May 2014. In the present case, the Trustee is challenging the "transfer" of the Subject Properties made by the deeds signed by Abie to Rema; the Trustee is not directly attacking the subsequent award by the state court in the Divorce Decree as the fraudulent "transfer."
>
> It would be an untenable (and unfounded) legal principle that would permit a debtor (like Abie) to voluntarily transfer away his property

7

> by deed to his spouse, and then somehow later "immunize" those transfers from attack as fraudulent transfers through a subsequent uncontested Divorce Decree. This cannot be what the Fifth Circuit intended (and is far beyond what was even addressed) in the *Erlewine* decision.

*Id.* at *40 (footnotes omitted) (citing *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 211 (5th Cir. 2003)).

Like *Wolf*, the Trustee here seeks to avoid a private transaction—the Settlement Agreement—which led to a judicial action—the Dismissal Order. Therefore, the Trustee is not directly attacking the Dismissal Order as a fraudulent transfer. Accordingly, if the Settlement Agreement is a result of a constructively fraudulent transfer, as debtors allege, the Court would find it untenable to permit Defendants to immunize the fraudulent transfer through the subsequently uncontested Dismissal Order. A review of other distinguishing factors of *Besing*, demonstrates that *Wolf*'s analysis correctly interpreted the Fifth Circuit's intentions.

### B. Adjudicated on the Merits

Defendants' primary argument is that the Dismissal Order was an adjudication on the merits, like the sanction order and judgment in *Besing*, and therefore demonstrates that the debtors received reasonably equivalent value for their claims as a matter of law (Dkt. #37 at p. 5). Defendants cite Louisiana law stating, "a judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial." (Dkt. #37 at p. 7) (quoting La. Code Civ. Proc. Ann. art. 1673). The Court finds *Besing* distinguishable because the "adjudication on the merits" in *Besing* and other similar cases is fundamentally different from the Dismissal Order here.

In this case, the state court did not consider the merits of the debtors' claims before dismissing the debtors' claims pursuant to an uncontested motion. Tango's financial condition deteriorated during the litigation of the Louisiana suit (Dkt. #40 at p. 2). During this time, Tango's

8

executives ceded control of Tango to Chief Restructuring Officer Dan Dooley. (Dkt. #40 at p. 2). Dooley caused Tango to enter the Settlement Agreement with Defendants on August 21, 2015 (Dkt. #40 at p. 2). The Settlement Agreement required Tango to dismiss the Louisiana suit (Dkt. #39 at p. 7). Consequently, Tango filed its motion to dismiss on September 17, 2015 (Dkt. #37-3). Defendants did not contest the motion to dismiss, and the state court dismissed the suit on September 22, 2015 (Dkt. #37-4). The Dismissal Order is one sentence in length and includes no analysis (Dkt. #37-4). Further, there is no evidence that the state court knew of or reviewed the Settlement Agreement, nor did the Settlement Agreement require the state court's approval. Therefore, the Dismissal Order is more similar to a consent judgment then the judgments found in *Besing* and similar cases where courts considered the merits of the debtor's case before dismissal. *See* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4443 (3d. ed. 2018) (footnotes omitted) ("The [consent] judgment results not from adjudication but from a basically contractual agreement of the parties. It can be entered only if the parties have in fact agreed to entry, it is to be enforced in accord with the intent of the parties, and it can be vacated according to basically contractual principles of fraud, ignorance, mistake, mutual breach, or special protection of favored parties.").

The opposite occurred in *Besing*, where the state court struck the debtors' pleading as a result of a discovery abuse. 981 F.2d at 1490. The court's consideration of the case and ultimate sanction created a presumption that the debtors' claims lacked merit. *Id.* at 1496 n.15. In other words, the dismissal occurred after the state court carefully considered the violation and sanctioned the debtors. This type of consideration of the case and pleadings is not apparent in the Dismissal Order at issue.

In *Erlewine,* Erlewine filed for a divorce in Texas state court. 349 F.3d at 207. After several days of trial, the divorce court entered a final decree of divorce. *Id.* In a subsequent adversary proceeding, the trustee sought to avoid the divorce decree under § 548. *Id.* at 208. Affirming the bankruptcy court's finding that the debtor received reasonably equivalent value as a matter of law, the Court noted:

> We are not sure that *Besing* sweeps so broadly as always to prevent a Trustee from challenging a divorce decree under § 548(a)(1)(B). But in this case the only thing that the Trustee can say by way of challenge to the property settlement provided by the divorce decree is that the state court divided the community assets unevenly. Whatever concerns might arise in other cases, the divorce before us—***which was fully litigated, without any suggestion of collusion, sandbagging, or indeed any irregularity***—should not be unwound by the federal courts merely because of its unequal division of marital property. Accordingly, we conclude that the bankruptcy court did not err in finding that the Debtor received reasonably equivalent value as a matter of law.

*Id.* at 212–13 (emphasis added) (footnotes omitted).[2] In the instant case, the debtors' claims were not fully litigated and the debtors allege an irregularity—the Settlement Agreement is a constructively fraudulent transfer. Accordingly, the Court believes this case presents one of the situations contemplated by the Fifth Circuit where *Besing* does not sweep-away the debtors' § 548 claims. Overall, in both *Besing* and *Erlewine*, the Fifth Circuit addressed cases where the state courts considered, or even tried, the parties' state-court claims. This is not the situation here, where the state court did not consider the merits of the parties' claims before dismissal.

This case is more similar to *Mt. McKinley. Mt. McKinley Ins. Co. v. Lac D'Amiante Du Quebec LTEE (In re ASARCO LLC)*, 513 B.R. 499 (S.D. Tex. 2012). In *Mt. McKinley*, Mt. McKinley settled its dispute. *Id.* Pursuant to the settlement, the state court then entered an agreed

---

2. The Fifth Circuit recognized that some bankruptcy courts have set aside property settlements under § 548. *Erlewine*, 349 F.3d at 212 n.8 (citing *Citibank, N.A. v. Williams (In re Williams)*, 159 B.R. 648 (Bankr. D. R.I. 1993); *Germain v. Kaczorowski (In re Kaczorowski)*, 87 B.R. 1 (Bankr. D. Conn.1988)).

stipulated order of dismissal. *Id.* at 502. In a subsequent adversary proceeding, ASARCO sought to set aside the settlement agreement. *Id.* Mt. McKinley moved to dismiss the adversary proceeding citing *Besing* and *Erlewine*. *Id.* at 503. The bankruptcy court denied Mt. McKinley's motion to dismiss and Mt. McKinley sought an interlocutory review from the district court of the ruling. *Id.* The court denied Mt. McKinley's motion for interlocutory appeal finding that neither *Besing* nor *Erlewine* applied. *Id.* at 509–10. The district court distinguished the two cases:

> *Erlewine* was resolved on cross-motions for summary judgment, after which the court affirmed the bankruptcy court's finding that the Trustee/Debtor had received reasonably equivalent value pursuant to the divorce decree at issue, thus negating the claim of fraudulent transfer. *Besing* . . . was affirmed by the Fifth Circuit on the basis that the state trial court had decided that the Debtors' claims had no merit. Since the claims had no merits, the transfer was as a matter of law one for reasonably equivalent value, again negating any claim for fraudulent transfer. This Court does not have enough of a record to either grant a summary judgment or to rule as a matter of law that reasonably equivalent value was transferred. Indeed at oral argument, counsel for Mt. McKinley told the Court that the settlement agreement—the very document that would exhibit the *quid pro quo* and perhaps therefore the existence of reasonably equivalent value—was not relevant to the appeal.
>
> . . . .
>
> The very petition here, however, suggests that the settlement in question involved some irregularity. Thus, this Court cannot, on the slim record before it, summarily dispose of the claims.

*Id.* at 509 (citations omitted). The same situation is before the Court in this case. The Trustee alleges irregularity in the Settlement Agreement and, therefore, the Court does not believe *Besing* mandates summary judgment.

### C. Voluntary/Involuntary Dismissal

Additionally, the Court believes there is a fundamental difference between an involuntary, judicial transfer of a debtor's claims and a voluntary, non-judicial transfer of a debtor's claims. In

11

*Besing* and *Erlewine*, the parties involuntarily transferred their claims due to a judicial action. *See Besing*, 981 F.2d at 1496; *Erlewine*, 349 F.3d at 207. In *Wolf* and *Mt. McKinley*, the parties voluntarily transferred their claims through a private action. *See Wolf*, 2016 WL 4940198, at *38; *Mt. McKinley*, 513 B.R. at 502. In *Wolf*, the court noted this distinction:

> [T]he divorce action in *Erlewine* and the Divorce Proceeding between Abie and Rema are at opposite ends of the spectrum. In *Erlewine*, the divorce and award were hotly contested by the debtor and non-debtor spouse and actively litigated in a state court trial that lasted several days. At the conclusion of the trial, the state court entered a divorce decree which granted ownership of more than 50% of the marital property to the non-debtor spouse. The state court in *Erlewine* specifically justified its disproportionate division of property in the divorce on several grounds, including that the debtor-spouse had used a significant amount of community funds on drug treatment and unnecessary prescription drugs and had taken unreasonable positions in the divorce action that drove up the expense of the divorce. The debtor in *Erlewine* had not "volunteered" to take fewer assets in the divorce, according to the Fifth Circuit.
>
> Nothing even close to this happened in the Divorce Proceeding filed by Rema against Abie. The Divorce Proceeding and attendant Divorce Decree were completely uncontested by Abie. Abie waived notice of the Divorce Proceeding, agreed that the Divorce Proceeding could be taken up by the state court without further notice to Abie, and waived the making of a record. The Divorce Decree states that Rema and her counsel appeared at a hearing on September 8, 2014. Abie did not appear at the hearing. The Divorce Decree has boilerplate language about a "just and equitable division" of properties, with no specific findings by the state court to justify the grossly unequal division of property between Abie and Rema. The Divorce Decree and the docket in the Divorce Proceeding indicate that the Divorce Decree was an "Agreed Judgment", and only Rema signed the Divorce Decree. Abie effectively "volunteered" to take fewer assets and let Rema take whatever property she wanted.

2016 WL 4940198, at *40 (citations omitted).

This distinction is crucial. The federalism concerns noted in *Besing* are implicated if a debtor may avoid an involuntary, judicial transfer under § 508. Essentially, a debtor seeking to

12

avoid an involuntary, judicial transfer—such as a sanction order or divorce decree entered after a trial on the merits—alleges that the state court is the fraudulent actor. Consequently, these types of actions should not be allowed. *See Besing*, 981 F.2d at 1496.

However, these federalism concerns are not implicated when a debtor seeks to avoid a voluntary, private transfer of the debtor's claims, which later leads to an unopposed dismissal by a state court. In such a case, the debtor alleges a party is the fraudulent actor, and the fraud is merely continued when the state court grants the subsequent, unopposed motion for dismissal.

## CONCLUSION

*Besing* stands for the important principle that federal courts must respect the disposition of state-law claims by state courts. *See* 981 F.2d at 1496. Defendants argue that allowing the Trustee to proceed on its claims violates the principle stated in *Besing*.

The Court disagrees because the "transfer" at issue occurred because of the Settlement Agreement, not the Dismissal Order. Further, the constructive fraud alleged by the Trustee occurred when the parties signed the Settlement Agreement, not when the state court granted the uncontested motion.

It is therefore **ORDERED** Defendants' Motion for Partial Summary Judgment is hereby **DENIED** (Dkt. #37).

**IT IS SO ORDERED.**
**SIGNED this 13th day of February, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE