IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOSER, as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, *et al.* | § § § | |
| | § | No. 4:17-cv-00598 |
| V. | § | Judge Mazzant |
| | § | |
| NAVISTAR INTERNATIONAL CORPORATION, *ET AL.* | § § § | |

## DEFENDANTS' PROPOSED JURY CHARGE MATERIALS

Defendants Navistar International Corporation; Navistar, Inc.; Navistar Leasing Company; Navistar Financial Corporation; Navistar Leasing Services Corporation; and ITA Truck Sales & Service, LLC (collectively "Defendants"), propose that the Court include in its charge to the jury the questions, definitions, and instructions set forth in this document.

In requesting these charge materials, Defendants do not concede that any submission to the jury is proper or that each of the submitted matters is appropriate for submission to the jury, nor do Defendants waive any position previously advanced to the Court, including any position set forth in any previously-filed motion for summary judgment on any issue.  Because the propriety of the charge must be evaluated in light of the evidence adduced at trial, this proposal is preliminary and subject to modification as necessary to conform to the trial record.

Respectfully submitted,

**McCRANIE, SISTRUNK, ANZELMO,
HARDY, McDANIEL & WELCH LLC**
195 Greenbrier Boulevard, Suite 200
Covington, LA 70433
Tel: 504-831-0946
Fax: 800-977-8810
*/s/ Lance B. Williams*
Lance B. Williams (LA 23373/ *Pro Hac Vice*)
Quincy T. Crochet (LA 30457/ *Pro Hac Vice*)
lwilliams@mcsalaw.com
qcrochet@mcsalaw.com

**HARTLINE DACUS BARGER DREYER,
LLP**
8750 North Central Expressway, Suite 1600
Dallas, Texas 75231
Tel: 214-369-2100
Fax: 214-369-2118
*/s/ Jeffrey S. Patterson*
Jeffrey S. Patterson, SBT # 15596700
Clayton J. Callen, SBT # 24086068
jpatterson@hdbdlaw.com
ccallen@hdbdlaw.com

**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214-220-7700
Fax: 214-220-7716
*/s/ James J. Lee*
James J. Lee, SBT # 12074550
Rebecca L. Petereit, SBT # 24062776
Katherine D. Grissel, SBT # 24059865
jimlee@velaw.com; rpetereit@velaw.com
kgrissel@velaw.com

**CLARK HILL STRASBURGER**
901 Main Street, Suite 6000
Dallas, Texas 75202
Tel: 214-651-4300
Fax: 214-659-4022
*/s/ P. Michael Jung*
P. Michael Jung, SBT # 11054600
Jadd F. Masso, SBT # 24041411
michael.jung@clarkhillstrasburger.com
jadd.masso@clarkhillstrasburger.com

**COUNSEL FOR NAVISTAR INC., NAVISTAR INTERNATIONAL CORPORATION,
AND ITS TRUCK SALES & SERVICE, LLC**

and

**KANE RUSSELL COLEMAN LOGAN PC**
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Tel: 713-425-7400
Fax: 713-425-7700
*/s/ Michael P. Ridulfo*
Michael P. Ridulfo, SBT # 16902020
mridulfo@krcl.com

**COUNSEL FOR NAVISTAR LEASING COMPANY, NAVISTAR FINANCIAL COR-
PORATION, AND NAVISTAR LEASING SERVICES CORPORATION**

## CERTIFICATE OF SERVICE

I certify that on this 14th day of February 2019, I served a copy of the foregoing *Defendants' Proposed Jury Charge Materials* electronically through the Court's CM/ECF System and emailed the same in accordance with the Federal Rules of Civil Procedure upon counsel for the Debtors and counsel for the Plan Trustee as follows:

J. Benjamin King, Esq.
Ben Thomas, Esq.
REID COLLINS & TSAI LLP
Thanksgiving Tower
1601 Elm Street, Suite 4250
Dallas, Texas 75201
bking@rctlegal.com
bthomas@rctlegal.com

Angela J. Somers, Esq.
Yonah Jaffe
REID COLLINS & TSAI LLP
810 Seventh Avenue, Suite 410
New York, NY 10019
asomers@rctlegal.com
yjaffe@rctlegal.com

James C. Baker
Horace Newton Cunningham, III
Roberts Cunningham & Stripling LLP
12222 Merit Drive, Suite 800
Dallas, Texas 75251
trucknlaw@aol.com
hncii@aol.com

*/s/ P. Michael Jung*
P. MICHAEL JUNG

**JURY INSTRUCTIONS (PATTERN & SPECIAL)**

**GENERAL INSTRUCTIONS**

Defendants propose that the Court give the jury the following instructions from the Fifth

Circuit Pattern Jury Instructions (Civil Cases) (Oct. 2016 revision):

1.1 [Instructions for Beginning of Trial]
1.2 [Preliminary Instructions to Jury]
2.1 [First Recess]
2.2 [Stipulated Testimony]*
2.3 [Stipulations of Fact]*
2.4 [Judicial Notice]*
2.5 [Discontinuance as to Some Parties]*
2.6 [Limiting Instruction]
2.7 [Charts and Summaries]
2.8 [Demonstrative Evidence]
2.9 [Witness Not Called]*
2.10 [Similar Acts]*
2.11 [Impeachment by Witness's Inconsistent Statement]*
2.13 [Deposition Testimony]
2.16 [Bias—Corporate Party Involved]
3.1 [Jury Charge]
3.2 [Burden of Proof: Preponderance of the Evidence]
3.3 [Evidence]
3.4 [Witnesses]
3.5 [Expert Witnesses]
3.6 [No Inference from Filing Suit]
3.7 [Duty to Deliberate; Notes]
15.1 [Consider Damages Only If Necessary]
15.2 [Compensatory Damages]
15.4 [Property Damage]
15.5 [Mitigation of Damages]

*if rendered applicable by trial events

# OMITTED MATERIALS

Defendants have omitted proposed jury charge materials relating to the following issues, in the belief that the Court should rule on those issues as a matter of law, for reasons stated in prior motions and briefing:

- Non-liability of Navistar, Inc., Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation

- Breach of express warranty [*see* Count I of the Tango Debtors' state-court petition]

- Implied warranty of merchantability [*see* Count II of the state-court petition]

- Breach of the duty of good faith and fair dealing [*see* Count III of the state-court petition]

- Negligent misrepresentation [*see* Count IV of the state-court petition]

- Fraud and fraudulent concealment [*see* Counts V and VII of the state-court petition]

- Unjust enrichment [*see* Count VI of the state-court petition]

- Violation of the Illinois Consumer Fraud and Deceptive Practices Act [*see* Count VIII of the state-court petition]

- Liability for trucks purchased or leased by non-debtor BJG Logistics, LLC

- Liability for trucks purchased or leased by Tango Leasing Corp.

- Allowance of Navistar Leasing Company's proof of claim

- Allowance of Navistar, Inc.'s, proof of claim

- Defendants' third-party complaint against non-debtors

- Equitable subordination

- *Alter ego* claims

Should the Court determine that any or all of these issues cannot be resolved as a matter of law, additional submissions to the jury regarding the issues will be appropriate. Additionally,

Defendants' Proposed Jury Charge 4810-8006-1576 v.9.docx

other issues not included in this list may be appropriate for a ruling by the Court as a matter of law, but may nevertheless be included in these materials out of an abundance of caution.

## SPECIAL INSTRUCTIONS

This case potentially involves two parts.  In Part One, the Trustee seeks to set aside the Louisiana settlement between the Tango Debtors and the Defendants.  You will first be asked questions that will determine whether the Trustee has proven the facts necessary to do so.  The instructions that follow may or may not direct you to answer questions in Part Two, depending on the outcome of Part One.  The questions in Part Two involve what is known under Louisiana law as the warranty against redhibitory defects.  I will now give you a general overview of the law in both parts.  Keep in mind that each question will contain additional instructions to assist you.

### Constructive Fraudulent Transfer – Essential Elements

For the Trustee to recover from the Defendants on his constructive fraudulent transfer claim, you must find that the Trustee proved *all* of the following elements by a preponderance of the evidence:

First: the Defendants received or were the beneficiaries of the challenged transfer;

Second: The Tango Debtors received the transfer within two years preceding the respective petition dates of the Tango Debtors;

Third: The Tango Debtors received less than reasonably equivalent value in exchange in the transaction; and

Fourth: Each of the Tango Debtors: (a) was insolvent at the time of the transfer or became insolvent as a result of the transfer; OR (b) at the time of the transfer, was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Tango Debtors was an unreasonably small capital; OR (c) at the time of the

transfer, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

Additional instructions will be given to you in the verdict form to assist you.

**Bankruptcy Code Section 544 & 548 – Remedies & Damages**

When a transfer is set aside under the Bankruptcy Code, the trustee may recover the property or its value.  Therefore, if you find in favor of the Trustee on his fraudulent transfer claim, you must decide whether the Trustee has proven by a preponderance of the evidence that he is entitled to recovery, which allows only (1) return of the property transferred (*i.e.*, the Louisiana state law claims) or (2) an award of the value of the Louisiana state law claims, insofar as the Trustee proved that value by a preponderance of the evidence.

[Source: 11 U.S.C. § 550; underlying adversary proceeding (Adv. Proc. No. 16-4109, Docket No. 90, at *6) ("This is not a typical fraudulent transfer action, and under the alleged facts, this Court cannot estimate damages without analyzing the merits of the state law claims and defenses.  The state law claims are non-core, and the determination of the merits of state law claims is best left for a jury.")]

**Jury Not to Consider Evidence of Settlement Discussions in Section 550 Analysis**

Because the law favors settlements, the offering or accepting of value to resolve a dispute may never be used as an admission of liability.  Evidence of the following is not admissible on behalf of either party to prove or disprove the validity or actual value of the property transferred:

(1) furnishing, promising or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

[Source: Fed. R. Evid. 408]

**Redhibitory Defect**

In a suit for redhibition, the plaintiff must prove: (1) the seller sold a thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that,

judged by a reasonable person's standard, had he known of the defect, he never would have purchased it, (2) the thing contained a non-apparent defect at the time of the sale, and (3) the seller was given an opportunity to repair the alleged defect. Minor defects alone do not constitute redhibitory defects. If the plaintiff fails to prove any one of these elements by a preponderance of the evidence, the plaintiff has not sufficiently proven its redhibition claim, and you must find for defendants.

[Source: La. Civ. Code art. 2520; *Pratt v. Himel Marine, Inc.*, 823 So. 2d 394 (La. Ct. App. 2002); *Kent v. Cob*, 811 So. 2d 1206 (La. Ct. App. 2002); *Fidele v. Crescent Ford Truck Sales, Inc.*, 786 So. 2d 147 (La. Ct. App. 2001)].

If a purchaser is no longer in possession of the item claimed to be defective, a rescission of the sale and a full return of the purchase price is not an available remedy. A reduction in the purchase price is the only recourse in a redhibition case if the buyer no longer possesses the product.

[Source: La. Civ. Code art. 2541; *Baker v. Mazda Motor of America*, 856 So. 2d 118 (La. Ct. App. 2003); *Bourne v. Rein Chrysler-Plymouth, Inc.*, 463 So.2d 1356 (La. Ct. App. 1984); *Roby Motors Co. v. Price*, 173 So. 793 (La. Ct. App. 1937)].

When a plaintiff fails to prove that certain defects were caused in the manufacturing process, damages for such defects cannot be assessed against the manufacturer.

[Source: *Millin v. Dawson*, 387 So. 2d 1213 (La. Ct. App. 1980)].

Factors to be considered in determining the amount of damages to be awarded in cases involving reduction of sales price of an item with a redhibitory defect include the number of defects, the frequency and length of attempted repairs of the defects, the inconvenience associated with the repairs, the actual damage, if any, caused by the defects, the actual cost of repairs and the curtailed use of the thing due to its defects.

[Source: *Malmay v. Western Star Trucks*, 903 So. 2d 1208 (La. Ct. App. 2005)].

# PROPOSED JURY VERDICT FORM

## QUESTION 1

Do you find that the Trustee has proven by a preponderance of the evidence that the Tango Debtors did not receive from the Defendants reasonably equivalent value in the Transaction?

"Tango Debtors" means Tango Transport, LLC; Tango Logistx, LLC; Gorman Group, Inc.; Tango Truck Services, LLC; Tango Enterprises, Inc.; and GMGO, LLC.

The term "Transaction" means the transactions, agreements, and financial dealings between the Tango Debtors and Defendants pursuant to which the Tango Debtors agreed to release Defendants and dismiss the Louisiana lawsuit with prejudice in exchange for Defendants' forbearance as well as financial and other concessions.

In determining reasonably equivalent value, you should consider the following:

- The value of the Transaction must be evaluated as of the time period of the Transaction and its implementation. Value is to be determined without the benefit of hindsight, meaning later-occurring events, evidence, and circumstances not available at the time of the Transaction cannot be taken into account.

- The value conferred on the Tango Debtors is measured by the economic benefit conferred on the Tango Debtors.

- The Tango Debtors need not have collected a dollar-for-dollar equivalent to receive reasonably equivalent value.

- You should consider, among other things, the value, if any, of Defendants' forbearance; not repossessing the leased trucks; reducing the Tango Debtors' monthly lease payments by 40%; deferring approximately $4.4 million in past due payments for four years, effective immediately; waiving approximately $800,000 in interest, late charges and other fees; and providing a new truck purchase option.

- For purposes of reasonably equivalent value, keeping the Tango Debtors' business operating, even if for a short time, is considered value.

- Reasonably equivalent value in the context of settlement must take into account the public policy favoring settlements.

- The value of settled claims is to be appropriately discounted to account for contingencies where value is uncertain, *e.g.*, the uncertainty of a favorable outcome in litigation. Accordingly, in evaluating the value of the Tango Debtors' released Louisiana state court claims, the posture and early stage of the litigation with respect to the claims released must be considered.

Answer "Yes" or "No."

**ANSWER:** _____

[Source: 11 U.S.C. § 548(a)(1)(B)(i); *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1127 (5th Cir. 1993) (evaluating debtor's decision to transfer value "as of the time it was made and during the time it was implemented—from the beginning of January through May 1989") (emphasis added))); *In re Opus East, LLC*, 528 B.R. 30, 83 (Bankr. D. Del. 2015) (reasonably equivalent value exchange need not be dollar for dollar); *Howell v. Fulford (In re So. Home and Ranch Supply, Inc.)*, 561 B.R. 810, 816 (Bankr. N.D. Ga. 2016); *Buckskin Realty Inc. v. Windmont Homeowners Assn., Inc. (In re Buckskin Realty Inc.)*, 2016 WL 5360750, at *10 (Bankr. E.D.N.Y. Sept. 23, 2016); *Xtra Petroleum Transp., Inc. v. Brad Hall & Assocs. (In re Xtra Petroleum Transp., Inc.)*, 2012 Bankr. LEXIS 1591, at *18–25 (Bankr. D.N.M. Apr. 11, 2012) (finding reasonably equivalent value given under settlement based on consideration of many factors, including inherent risks of litigation, and explaining that "in the context of a fraudulent transfer action seeking to set aside a settlement, the Court finds that it is appropriate to take into account the strong public policy favoring settlement agreements.") (citing *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994) ("...public policy wisely encourages settlements..."); *In re Artha Management, Inc.*, 91 F.3d 326, 329 (2d. Cir. 1996) (court declines to set aside settlement agreement as a fraudulent transfer, noting "...public policy favor[s] settlements..."); *Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*, 263 B.R. 214, 220 (W.D. Tex. 2000) (finding that economic benefit flowing from a debtor's ability to stay in business is value for purposes of reasonably equivalent value); *Official Comm. of Unsecured Creditors of Propex, Inc. v. BNP Paribas (In re Propex, Inc.)*, 415 B.R. 321, 325 (Bankr. E.D. Tenn. 2009) ("breathing room" for the debtor may constitute reasonably equivalent value, even if it turns out to be short-lived); *Advanced Telecom. Network, Inc. v. Allen (In re Advanced Telecom. Network, Inc.)*, 490 F.3d 1325, 1337 (11th Cir. 2007) (where "[c]ontinuation of the litigation brought uncertainty, the possibility of an unfavorable judgment against [the debtor], and a guarantee of substantial attorney fees," the value of the contingent liability "should have been discounted by the probability of its occurrence" for purposes of determining reasonably equivalent value); *Fed. Dep. Ins. Corp. v. Bell*, 106 F.3d 258, 264 (8th Cir. 1997) (considering value for purposes of reasonably equivalent value and explaining that "[t]o correctly 'value the contingent liability, it is necessary to discount it by the probability that the contingency will occur and the liability will become real'" and "[w]here a liability is contingent on an impossible or extremely unlikely event, its value will be nothing or close to nothing, and will have negligible or no effect on the net value of an asset" and "in such circumstance, a contingent liability need not be considered in determining the net worth of an asset") (quoting *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir. 1988) and citing *In re Davis*, 169 B.R. 285, 302 (E.D.N.Y. 1994); *Hansen v. Hansen*, 302 N.W.2d 801, 802 (S.D. 1981))); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 594 (11th Cir. 1990) (examining reasonably equivalent value and explaining that "a contingent liability cannot be valued at its potential face amount; rather, it is necessary to discount it by the probability that the contingency will occur and the liability become real") (internal quotations omitted); *Cooper v. Ashley Commcns., Inc. (In re Morris Commcns. NC, Inc.)*, 914 F.2d 458, 469, 475 (4th Cir. 1990) (examining whether reasonably equivalent value was given in the context of a party with a "lottery" chance of being awarded a license, and explaining that it is the value of the lottery chance allowing "for the probability of winning the lottery" that must be valued, not the "'full settlement' (which was the equivalent of a license)").]

If you answered "Yes" to Question 1, then answer Question 2; otherwise, do not answer Question 2 and proceed to Question 3.

## QUESTION 2

Do you find that the Trustee has proven by a preponderance of the evidence that, on the date of the Transaction, the Tango Debtors were insolvent?

The Tango Debtors were insolvent if (a) they had a financial condition such that the sum of their debts was greater than all of their property at a fair valuation; (b) they were rendered insolvent as a result of the Transaction; (c) they were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Tango Debtors was an unreasonably small capital; or (d) they intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

Answer "Yes" or "No."

**ANSWER:** _____

[Source: 11 U.S.C. §§ 101(32), 548(a)(1)(B)(ii)]

The Trustee has additionally made a similar claim to set aside the transfer under Louisiana law. That claim has different elements of proof, set forth in Question 3.

## QUESTION 3

Do you find that the Trustee has proven by a preponderance of the evidence that the Transaction caused the Tango Debtors to become insolvent or increased their insolvency?

For the purposes of this question, a debtor is insolvent when the total of its liabilities exceeds the total of its fairly appraised assets.

A transfer increases an insolvent debtor's insolvency if it exceeds the fair value of any consideration given in exchange.

Answer "Yes" or "No."

**ANSWER:** _____

[Source: La. Civ. Code arts. 2036 & 2037; *In re Kleinberger*, No. 08-1054, 2009 WL 2848990, at *4 (Bankr. E.D. La. Apr. 3, 2009) (increase of insolvency); *see In re JCC Environmental, Inc.*, 575 B.R. 692, 700-01 (E.D. La. 2017) (little or no value)]

If you have answered "Yes" to Question 3, then answer Question 4; otherwise, do not answer Question 4.  If you have answered "No" to Questions 1 <u>or</u> 2, <u>and</u> you have answered "No" to Question 3, please sign and date the Verdict Form and notify the bailiff.

## QUESTION 4

Did the Tango Debtors enter into the transaction in the regular course of their business?

Answer "Yes" or "No."

**ANSWER:**　　　_____

[Source: La. Civ. Code art. 2040; *WRT Creditors Liq. Trust v. WRT Bankr. Lit. Master File Defendants (In re WRT Energy Corp.)*, 282 B.R. 343, 415-16 (Bankr. W.D. La. 2005) (indicating that art. 2040 does not define "regular" or "regular course of business" and that legislative history provides no guidance, but explaining that consideration of "regular course of business" requires analysis of entity's prior business dealings with regard to the kind of transaction at issue, and whether the transaction has a negative impact on the entity's bottom line, and, additionally, prior dealings between the parties may be an "indicia of ordinary course of business")]

If you have answered "Yes" to Question 2 or you have answered "No" to Question 4, then answer Question 5; otherwise, do not answer Question 5, and please sign and date the Verdict Form and notify the bailiff.

# QUESTION 5

Do you find that the Trustee has proven by a preponderance of the evidence that any of the Navistar trucks with the 2010 EPA engine that were purchased by the Tango Debtors contained a redhibitory defect or defects?

A defect means a physical imperfection or deformity or a lacking of the necessary components or level of quality. The defect must have existed at the time of delivery.

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.

A defect is also redhibitory when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.

Minor defects alone do not constitute redhibitory defects.

Answer "Yes" or "No."

**ANSWER:**  _____

If you answered "yes," identify on the attached chart which truck or trucks contained a redhibitory defect.

[Source: La. Civ. Code art. 2520 (redhibitory defect); La. Civ. Code art. 2530 (time of delivery); *Cazaubon v. Cycle Sport, LLC*, 79 So. 3d 1063, 1065 (La. Ct. App. 2011) (defect); *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So. 2d 466, 494 (Ct. App. 1994) (defect), *writ denied*, 638 So. 2d 1094 (La. 1994); *Harper v. Coleman Chrysler-Plymouth-Dodge, Inc.*, 510 So. 2d 1366, 1369 (La. Ct. App. 1987) (defect); *Fidele v. Crescent Ford Truck Sales, Inc.*, 786 So. 2d 147, 153 (La. Ct. App. 2001) (minor defects)]

If you have answered "Yes" to Question 5 for any truck or trucks listed in the attached chart, then answer Question 6 with respect to that truck or those trucks only; otherwise, do not answer Question 6, and please sign and date the Verdict Form and notify the bailiff.

## QUESTION 6

Do you find that the Trustee has proven by a preponderance of the evidence the Tango Debtors did not know of the redhibitory defects at the time of the sale, and that a reasonably prudent buyer of the trucks would not have discovered the defects?

A reasonably prudent buyer would discover a defect if, acting under similar circumstances, it would discover the defect through a simple inspection of the property. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness.

Answer "Yes" or "No" under the column indicated on the attached chart for each truck you found in answer to Question 5 to contain a redhibitory defect.

[Source: La. Civ. Code art. 2521; *Amend v. McCabe*, 664 So. 2d 1183, 1188 (La. 1995)]

If you have answered "Yes" to Question 6 for any truck or trucks listed in the attached chart, then answer Question 7; otherwise, do not answer Question 7, and please sign and date the Verdict Form and notify the bailiff.

## QUESTION 7

Do you find that the Trustee has proven by a preponderance of the evidence that the defendants listed below had actual knowledge of a redhibitory defect in the trucks?

In answering this question, consider only the truck or trucks for which you have answered "Yes" to Question 6.

Answer "Yes" or "No."

Answer: _____

[Source: La. Civ. Code art. 2522]

If you have answered "No" to Question 7, then answer Question 8; otherwise, do not answer Question 8.

## QUESTION 8

Do you find that the Trustee has proven by a preponderance of the evidence that the Tango Debtors gave the defendants listed below timely notice of the existence of a redhibitory defect in the trucks?

Notice is timely if it is sufficient to allow the seller the opportunity to make any required repairs.

In answering this question, consider only those model year trucks for which you have answered "Yes" to Question 6.

Answer "Yes" or "No."

Answer: _____

[Source: La. Civ. Code art. 2522]

Answer Question 9 only with respect to the truck or trucks for which you answered "Yes" to Question 6 in the attached chart.

## QUESTION 9

Do you find that the Trustee has proven by a preponderance of the evidence that for each truck you identified in answer to Question 6 either (a) the Tango Debtors tendered the truck for repairs of the redhibitory defects within one year of the filing of the Louisiana lawsuit; or (b) that no more than one year lapsed between any repair for the same defect?

Answer "Yes" or "No" under the column indicated on the attached chart for each truck for which you answered "Yes" to Question 6.

[Source: La. Civ. Code art. 2534]

Answer Question 10 only with respect to the truck(s) listed in the attached chart for which you answered "Yes" to Question 9. If you have not answered "Yes" to Question 9 for any trucks, please sign and date the Verdict Form and notify the bailiff.

## QUESTION 10

Based on a preponderance of the evidence, in light of all circumstances, what amount less, if any, would a reasonable buyer have paid for the Subject Trucks that you have found to contain redhibitory defects?

The proper amount of a price reduction is the difference between the actual selling price and the price a reasonable buyer and seller would have agreed upon if they had both known of the defects.

Factors to be considered in determining the amount of a price reduction include the number of defects, the frequency and length of attempted repairs of the defects, the inconvenience associated with the repairs, the actual damage, if any, caused by the defects, the actual cost of repairs and the curtailed use of the thing due to its defects. Additionally, consider the goodwill, warranty concessions, warranty work, extended warranty, downtime reimbursements, sales and financing incentives, and all other actions of the Defendants which may have prevented or minimized any inconvenience to the Tango Debtors.

A purchaser has a duty to minimize or mitigate his damages and injuries by using reasonable diligence and means under the circumstances to prevent further loss. The care and diligence required is the same as that which would be used by a reasonable person under similar circumstances. He need not do what is impractical or unreasonable in his efforts to minimize the damages; however, his efforts must be reasonable and according to the rules of common sense, good faith, and fair dealings. Plaintiffs must take reasonable, ordinary, and available steps to prevent damages or injuries from being increased imprudently.

Do not include any amount for damages as a result of the Tango Debtor's failure to mitigate their damages.

Answer in dollars and cents, if any, under the indicated column on the attached chart, only with respect to the truck or trucks for which you answered "Yes" to Question 9 in the attached chart.

[Source: La. Civ. Code art. 2520; *Baker v. Mazda Motor of America*, 856 So. 2d 118, 122 (La. Ct. App. 2003) (no longer in possession); *Bourne v. Rein Chrysler-Plymouth, Inc.*, 463 So. 2d 1356, 1358 (La. Ct. App. 1984) (no longer in possession; proper price reduction); *Malmay v. Western Star Trucks*, 903 So. 2d 1208, 1214 (La. Ct. App. 2005) (factors); *Unverzagt v. Young Builders, Inc.*, 215 So. 2d 823 (La. 1968) (mitigation); *Moyse v. Runnels School, Inc.*, 457 So. 2d 767 (La. Ct. App. 1984) (mitigation); *Easterling v. Halter Marine, Inc.*, 470 So. 2d 221 (La. Ct. App. 1985) (mitigation); *Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc.*, 430 So. 2d 696 (La. Ct. App. 1983) (mitigation); *Turgeau v. Pan American World Airways, Inc.*, 764 F.2d 1084 (5th Cir. 1985) (mitigation)]

# QUESTION 11

What other amounts, if any, do you find by a preponderance of the evidence should be awarded to the Tango Debtors for the redhibitory defect(s) found by you?

The proximate cause of an injury or damage is the primary or moving act or acts that play a substantial part in bringing about or actually causing the injury or damage. There may be more than one cause of an injury or damage.

A purchaser has a duty to minimize or mitigate his damages and injuries by using reasonable diligence and means under the circumstances to prevent further loss. The care and diligence required is the same as that which would be used by a reasonable person under similar circumstances. He need not do what is impractical or unreasonable in his efforts to minimize the damages; however, his efforts must be reasonable and according to the rules of common sense, good faith, and fair dealings. Plaintiffs must take reasonable, ordinary, and available steps to prevent damages or injuries from being increased imprudently.

Do not include any amount for damages as a result of the Tango Debtors' failure to mitigate their damages.

If you have answered "No" to Question 8, do not include in your answers to this question any repair costs that could have been avoided if the seller had received timely notice.

Consider only damages attributable to those trucks for which you have answered "Yes" to Question 9 in the attached chart.

Do not include in your answers to this question any amounts already included by you in your answer to Question 10.

Consider the following elements of damage and none other. Answer in dollars and cents, if any. Do not include interest on any damage amounts.

Damages proximately caused
by the redhibitory defect(s)                    $_____

[Source: La. Civ. Code art. 2545; La. Civ. Code art. 2522 (avoidable repair costs); *Justiss Oil Co. v. Oil Country Tubular Corp.*, 216 So. 3d 346, 352 (2017) (proximate cause); *McAdams v. Louisiana Power & Light Co.*, 659 So. 2d 820, 825 (La. Ct. App. 1995) (definition of proximate cause); *see also* sources for Question 10 regarding mitigation]

# QUESTION 12

What is the total amount of the value you find by a preponderance of the evidence to have been provided by Defendants as part of the Transaction?

In answering this question, you should consider, among other things, the value, if any, of Defendants not repossessing the leased trucks; reducing the Tango Debtors' monthly lease payments by 40%; deferring approximately $4.4 million in past due payments for four years, effective immediately; waiving approximately $800,000 in interest, late charges and other fees; and providing a new truck purchase option.

Answer in dollars and cents, if any.  Do not include interest on any amount.

**ANSWER:    $_____**

[Source: *COLLIER ON BANKRUPTCY* ¶ 550.02[3][a] (Richard Levin & Henry J. Sommer, eds., 16th ed.) (*citing ASARCO LLC v. Ams. Mining Corp.*, 404 B.R. 150, 176 (S.D. Tex. 2009); *Bakst v. Clarkston (In re Clarkston)*, 387 B.R. 882, 891 (Bankr. S.D. Fla. 2008); *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 176-77 (Bankr. S.D.N.Y. 1998), *corrected by* 220 B.R. 177 (Bankr. S.D.N.Y. 1998)); *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1126 (5th Cir. 1993), *abrogated on other grounds, In re of Dunham*, 110 F.3d 286, 289 (5th Cir. 1997) (value factors including indirect financial effects); *Templeton v. O'Cheskey (Matter of Am. Housing Found.)*, 785 F.3d 143, 162-63 (5th Cir. 2015) (value includes any direct or indirect benefit, including opportunity to receive economic benefit in the future); *PSN Liquidating Trust v. Intelsat Corp. (In re PSN USA, Inc.)*, 615 F. App'x 925, 932 (11th Cir. 2015) (fact that debtor ultimately filed bankruptcy does not preclude finding that value was given, even if value increased debtor's insolvency; value of investment, even a risky one, is to be determined at time of purchase)]

## QUESTION 13

Do you find by a preponderance of the evidence that Defendants, in good faith, exchanged value with the Tango Debtors in the Transaction?

Answer "Yes" or "No."

**ANSWER:** _____

[Source: 11 U.S.C. § 548(c)]

| VIN | Model Year | Date of Acquisition | Question 5 (redhibitory defect) | Question 6 (buyer's knowledge or constructive knowledge of defect) | Question 9 (timing of notice and tender for repairs) | Question 10 (price reduction, if any) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |