J. Benjamin King (State Bar No. 24046217)
D. Benjamin Thomas
(State Bar No. 24099991)
REID COLLINS & TSAI LLP
Thanksgiving Tower
1601 Elm Street, Suite 4250
Dallas, Texas 75201
214.420.8900 (Phone)
214.420.8909 (Fax)
bking@rctlegal.com
bthomas@rctlegal.com

Angela J. Somers (*Pro Hac Vice*)
Yonah Jaffe (*Pro Hac Vice*)
REID COLLINS & TSAI LLP
810 Seventh Avenue, Suite 410
New York, NY 10019
212.344.5200 (Phone)
212.344.5299 (Fax)
asomers@rctlegal.com
yjaffe@rctlegal.com

*Special Counsel for Plan Trustee*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOSER, as Plan Trustee of the Trust under the Amended Joint Plan of Liquidation of Tango Transport, LLC, *et al.*, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| NAVISTAR INTERNATIONAL CORPORATION, *et al.*, | § § § | Civil Action No. 4:17-cv-598 Judge Mazzant |
| Defendants. | § § | |

**TRUSTEE'S PROPOSED JURY INSTRUCITONS**

PROPOSED PRELIMINARY INSTRUCTION NO. 1

## Instructions for Beginning of Trial

Members of the jury panel, if you have a cell phone, PDA, Blackberry, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and

you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

**Source**: Fifth Circuit Pattern Jury Instructions (Civil Cases) ("PJI") 1.1

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

PROPOSED PRELIMINARY INSTRUCTION NO. 2

## Preliminary Instructions to Jury

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Black- berry, PDA, computer, the Internet, any Internet ser- vice, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any is- sue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the wit- nesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you

leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present his case through witness testimony and documentary or other evidence. Next, the defendants will have an opportunity to present their case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. **Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.**

**Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.**

**It is now time for the opening statements.**

**Source**: PJI 1.2

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

PROPOSED JURY CHARGE INSTRUCTION NO. 1:


MEMBERS OF THE JURY:

It is now my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

**Source**: PJI 3.1


ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

PROPOSED JURY CHARGE INSTRUCTION NO. 2

## Burden of proof

   Unless indicated otherwise in the questions and instructions below, Plaintiff Chris Moser has the burden of proving his case by a preponderance of the evidence.  To establish by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that Plaintiff Chris Moser has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim.

**Source**:  PJI 3.2 (modified)


ACCEPTED:  _____
REJECTED:  _____
MODIFIED:  _____

PROPOSED JURY CHARGE INSTRUCTION NO. 3

## Evidence

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Source**: PJI 3.2 (modified)

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

PROPOSED JURY CHARGE INSTRUCTION NO. 4

## Witnesses

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand or on video, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other and places contrary to those made or shown here? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.[1]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.[2]

Certain testimony has been presented to you through depositions. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys questioned this witness under oath. A court reporter and, in some cases, a videographer was present and recorded the testimony. The questions and answers have been read or shown to you during the trial. This deposition testimony is entitled to the same consideration and to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.[3]

Similarly, testimony from a previous trial has been presented to you. As with a deposition, during this previous trial, a court reporter recorded the witness's sworn answers to questions that the witness was asked during that trial. Those recorded questions and answers have been read to or shown to you during this trial. This testimony is entitled to the same consideration and to be weighed

---

[1] PJI 3.4.

[2] PJI 3.5.

[3] PJI 2.13 (modified).

and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in this trial.[4]


ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

---

[4] PJI 2.13 (modified).

PROPOSED JURY CHARGE INSTRUCTION NO. 5

## Corporate Party's Agents and Employees

A business may act only through natural persons who are its agents or employees.  Generally, any agents or employees of a business may bind the business by their acts and declarations made while acting within the scope of their authority delegated to them by the business, or within the course of their duties as employees of the business.

**Source**:  Final Jury Charge [Docket No. 160] at 5, *Feld Motor Sports, Inc. v. Traxxas, LP*, Case No. 4:14-cv-00543-ALM (E.D. Tex.) (Mazzant, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit Instr. 4.2 (2017 ed.) (modified); 3B O'MALLEY, FEDERAL JURY PRACTICE AND INSTRUCTIONS, CIVIL ("O'MALLEY") § 103:31 (6th ed.) (modified)

ACCEPTED:  _____
REJECTED:  _____
MODIFIED:  _____

PROPOSED JURY CHARGE INSTRUCTION NO. 6

## Duty to Deliberate

It is now your duty to deliberate and consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

**Source**: PJI 3.7

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

## DEFINITIONS

"Release" means the Tango Entities' surrendering their ability to prosecute the Engine Claims against the Defendants in the August 31, 2015 Settlement Agreement.

"Tango Entities" means, collectively, all six of the following companies: (1) Tango Transport, LLC, (2) Tango Logistx, LLC, (3) Gorman Group, Inc., (4) Tango Truck Services, LLC, (5) Tango Enterprises, Inc., and (6) GMGO, LLC.

"Engine Claims" means the legal claims that the Tango Entities asserted, or could have asserted, against the Defendants prior to the Release, including redhibition claims, and claims for negligent misrepresentation, fraudulent concealment, fraud, and violation of the Illinois Consumer Fraud and Deceptive Practices Act.

"Louisiana Lawsuit" means the lawsuit that the Tango Entities filed against the Navistar Defendants and ITA in the First Judicial District Court of Caddo Parish, Louisiana, Case No. 580110-A.

"Defendants" means, collectively, the Navistar Defendants and ITA.

"Navistar Defendants" means, collectively, all five of the following companies: (1) Navistar International, (2) Navistar, Inc., (3) Navistar Financial, (4) Navistar Leasing, (5) Navistar Leasing Services

"Navistar International" means Navistar International Corporation.

"Navistar Financial" means Navistar Financial Corporation.

"Navistar Leasing" means Navistar Leasing Company.

"Navistar Leasing Services" means Navistar Leasing Services Corporation.

"ITA" means ITA Truck Sales & Service, LLC, which was formerly called International Trucks of Acadiana, LLC.

"August 31, 2015 Settlement Agreement" means the Receipt, Release and Settlement of All Claims and Indemnity Agreement executed on August 31, 2015 between and among the Tango Entities and related companies and persons, on the one hand, and the Defendants, on the other hand.

## QUESTION 1

Did the Tango Entities receive less than reasonably equivalent value in exchange for the Release?

Answer "Yes" or "No."

Answer: _____

## INSTRUCTIONS FOR QUESTION 1:

"Reasonably equivalent value" means value that is substantially comparable to the worth of the transferred property, measured as of the time of the Release and from the perspective of the Tango Entities' creditors.[5]  In assessing whether the Tango Entities received reasonably equivalent value in exchange for the Release, you must consider the value received by the Tango Entities in light of their business circumstances at the time of the Release.[6]

"Value" means property, or satisfaction or securing of a present or antecedent debt.[7]

"Property" means anything that is owned or possessed, regardless of whether that thing is tangible or intangible, and includes legal claims or causes of action.[8]

A "present or antecedent debt" means liability on a claim that existed before the Release.[9]

**Source**:  11 U.S.C. § 548(a)(1)(B)(i)

---

[5] *In re TransTexas Gas Corp.*, 597 F.3d 298, 306 (5th Cir. 2010) ("'[R]easonably equivalent value' means that 'the debtor has received value that is substantially comparable to the worth of the transferred property.'") (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 548 (1994)); *Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1126 n.8 (5th Cir. 1993) (citing *In re Morris Commc'ns NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990) and COLLIER ON BANKRUPTCY ¶ 548.09 at 116 (15th ed. 1984) to note that whether a debtor received reasonably equivalent value must be measured at the time the debtor made the challenged transfer); *WRT Creditors Liquidation Trust v. WRT Bankruptcy Litigation Master File Defendants (In re WRT Energy Corp.)*, 282 B.R. 343, 407 (Bankr. W.D. La. 2001) ("[T]he fair market value of what the debtor gave and received must be valued objectively and from the perspective of the debtors' creditors, without regard to the subjective needs or perspectives of the debtor or transferee.").

[6] *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1127 (5th Cir. 1993) (test of reasonably equivalent value is whether it provided economic benefit to the debtor; payments made to a company that could continue to operate may constitute reasonably equivalent value, but payments made to a company that could no longer operate could not constitute reasonably equivalent value).

[7] 11 U.S.C. § 548(d)(2)(A).

[8] *Property*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Property*, WEBSTER'S NEW COLLEGE DICTIONARY (3d ed. 2008). *See also e2 Creditors' Trust v. Farris (In re e2 Commc'ns, Inc.)*, 320 B.R. 849, 856 (Bankr. N.D. 2004) (concluding that causes of action are "property" and citing *Besing v. Hawthorn (In re Besing)*, 981 F.2d 1488, 1494 (5th Cir. 1993) to hold that a release is a "transfer of the Debtor's claims" and therefore a transfer of property).

[9] 11 U.S.C. § 101(12); *Antecedent Debt*, BLACK'S LAW DICTIONARY (10th ed. 2014).

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

If you answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 2

At the time of the Release—

1. were the Tango Entities insolvent, or did they become insolvent as a result of the Release; **OR**

2. were the Tango Entities engaged in a business or a transaction, or about to engage in a business or transaction, for which their remaining property was unreasonably small capital; **OR**

3. did the Tango Entities intend to incur, or believe that they would incur, debts beyond the Tango Entities' ability to pay as those debts came due?

Answer "Yes" or "No."

Answer: _____

INSTRUCTIONS FOR QUESTION 2:

"Insolvent" is a financial condition such that the sum of an entity's debts is greater than all of its property, at a fair valuation.[10]

An entity has "unreasonably small capital" if it is undercapitalized. An entity is undercapitalized if, considering evidence related to its financial health (including its assets, revenues, expenses, profits, and losses) at the time of the transaction at issue, it was reasonably foreseeable that the entity would be unable to generate sufficient profits to sustain its operations.[11]

**Source**: 11 U.S.C. § 548(a)(1)(B)(ii)

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

---

[10] 11 U.S.C. § 101(32)(A); O'MALLEY § 164.230.

[11] *See Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1070 (3d Cir. 1992) (defining "unreasonably small capital" as "the inability to generate sufficient profits to sustain operations" that "encompass[es] financial difficulties short of equitable solvency"); *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 552 (Bankr. D. Del. 2012) (noting that "reasonable foreseeability" is the standard for evaluating undercapitalization); COLLIER ON BANKRUPTCY ¶ 548.05[3][b] (16th ed. 2014) ("The nature of the enterprise, normal turnover of inventory rate, method of payment by customers, etc. . . . are all relevant factors in determining whether the amount of capital was unreasonably small at the time of, or immediately after, the transfer.").

Regardless of your answers to Question 1 and Question 2, you must answer Question 3.

## QUESTION 3

Did the Release cause the Tango Entities to become insolvent, or, if the Tango Entities were already insolvent at the time of the Release, did the Release cause the Tango Entities to become more insolvent?

Answer "Yes" or "No."

Answer: _____

INSTRUCTIONS FOR QUESTION 3:

"Insolvent" is a financial condition such that the sum of an entity's debts is greater than all of its property, at a fair valuation.[12]

**Source**:  LA. CIV. CODE ANN. art. 2036.

ACCEPTED:   _____
REJECTED:   _____
MODIFIED:   _____

---

[12] 11 U.S.C. § 101(32)(A); LA. CIV. CODE ANN. art. 2037; *WRT Creditors Liquidation Trust v. WRT Bankruptcy Litigation Master File Defendants (In re WRT Energy Corp.)*, 282 B.R. 343, 410 (holding that the balance sheet test of insolvency applies to both constructive fraudulent transfer actions under the Bankruptcy Code and revocatory actions under Louisiana law); O'MALLEY § 164.230.

If you answered "Yes" to Question 3, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 4

Were the Tango Entities acting in the regular course of their business when they executed the Release?

Answer "Yes" or "No."

Answer: _____

INSTRUCTIONS FOR QUESTION 4:

The Defendants have the burden to prove by a preponderance of the evidence that the Tango Entities were acting in the regular course of their business when they executed the Release.[13]

To prove by a preponderance of the evidence means to prove something is more likely so than not so.[14]

A transaction occurs in the "regular course of business" when it reflects normal financial relations between a debtor and a creditor, including customary transactions that are incurred and paid on a regular basis in the course of a debtor's business.[15]

To determine whether a transaction occurs in the regular course of business, you should consider (1) the time period over which the parties engaged in similar transactions; (2) whether the form of the transaction differs from past practices; and (3) whether the creditor gained an advantage through the transaction over other creditors in light of the debtors deteriorating financial condition.[16]

Releases, payments, and transfers made to settle litigation are not made in the regular course of business.[17]

---

[13] *See In re WRT Energy Corp.*, 282 B.R. at 416 ("[A]rticle 2040 is an affirmative defense to the revocatory action [and] the burden of proof as to whether the transactions were in the ordinary course of business rests on the Defendants.").

[14] PJI 3.2.

[15] *See Robbins v. Leverich*, 6 La. 340, 344 (La. 1834); 5 COLLIER ON BANKRUPTCY ¶ 547.04(2)(a)(ii)(B) (15th ed. 1984) (construing 11 U.S.C. § 547(c)'s ordinary course defense).

[16] *See Montgomery Ward, LLC v. OTC Int'l, Ltd.* (*In re Montgomery Ward, LLC*), 348 B.R. 662, 674 (Bankr. D. Del. 2006) (construing analogous "ordinary course of business" defense under 11 U.S.C. § 547(c)(2) and collecting cases); *see also Lightfoot v. Amelia Maritime Servs.* (*In re Sea Bridge Marine, Inc.*), 412 B.R. 868, 872 (Bankr. E.D. La. 2008) (same).

[17] *See Energy Coop., Inc. v. SOCAP Int'l, Ltd.*, 832 F.2d 997, 1005 (7th Cir. 1987) ("'[P]ayments made pursuant to a settlement agreement, which appear to be the result of an antecedent debt and prior dispute between the parties, are simply

**Source**: L<small>A</small>. C<small>IV</small>. C<small>ODE</small> A<small>NN</small>. art. 2040

ACCEPTED:   _____
REJECTED:    _____
MODIFIED:   _____

---

not in the ordinary course of business.'" (quoting *Carrier Corp. v. MID Corp., (In re Daikin Miami Overseas, Inc.)*, 65 B.R. 396, 398 (S.D. Fla. 1986))).

If you answered "Yes" to Question 2 **or** you answered "No" to Question 4, then answer the following question.  Otherwise do not answer the following question.

## QUESTION 5

Which of the following Defendants, if any, acted in good faith when receiving the Release?

Answer "Yes" or "No" for each of the following:

    a.  Navistar International      _____

    b.  Navistar Inc.      _____

    c.  ITA      _____

## INSTRUCTIONS FOR QUESTION 5:

Each of the Defendants listed in Question 5 has the burden to prove that it received the Release in good faith.[18]

To prove that it received the Release in "good faith," a Defendant must establish by a preponderance of the evidence that it lacked actual and constructive knowledge that the Tango Entities were insolvent at the time of the Release.[19]

To establish by a preponderance of the evidence means to prove something is more likely so than not so.[20]

---

[18] *See Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 308 (S.D.N.Y. 2010) (stating that, to invoke 11 U.S.C. § 548(c), a "transferee bears the burden of proving that it took: (1) 'for value . . . to the extent that [it] gave value' to the debtor in exchange for such transfer and (2) 'in good faith.'" (quoting *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Grp., LLC)*, 396 B.R. 810, 844 (Bankr. S.D.N.Y. 2008))); *see also Coleman v. Robinson (In re Lenard)*, 849 F.2d 974, 979 (5th Cir. 1988) (noting that Louisiana Civil Code article 2038 "concerns the specific situation" where a person transfers property to a "good-faith purchaser").  The 1984 Revision Comments to Louisiana Civil Code art. 2038 confirm that the statute "reproduces the substance" of former article 1981.  LA. CIV. CODE ANN. art. 2038, Comment (a).  Former article 1981 required, among other things, "good faith" on behalf of the transferee.  *See* LA. CIV. CODE ANN. art. 1981 (1870).  The 1984 Revision Comments further equate "good faith" to lack of "knowledge of the obligor's insolvency."  LA. CIV. CODE ANN. art. 2038, Comments (b), (c).

[19] *See Templeton v. O'Cheskey (In re Am. Housing Found.)*, 785 F.3d 143, 164 (5th Cir. 2015) (stating that "the appropriate test for determining good faith under Section 548(c)" requires "'look[ing] to whether the claimant was on notice of the debtor's insolvency'" (quoting *Horton v. O'Cheskey (In re Am. Housing Found.)*, 544 Fed. Appx. 516, 520 (5th Cir. 2013))); PJI 3.2 (modified).

[20] PJI 3.2 (modified).

"Insolvent" is a financial condition such that the sum of an entity's debts is greater than all of its property, at a fair valuation.[21]

Actual knowledge is what a person or company actually knows. It includes the knowledge of an agent acting within the scope of his or her agency. An agent is a person who is authorized to act on behalf of another. Examples of agents include officers, directors, employees, and attorneys. Here, a Defendant had actual knowledge that the Tango Entities were insolvency if that Defendant (or its agent acting within the scope of his or her agency) actually reached the conclusion that the Tango Entities were insolvent.[22]

Constructive knowledge is knowledge of facts (including those known to an agent acting within the scope of his or her agency) that would have excited the suspicions of a person of ordinary prudence under the same or similar circumstances and led him or her to investigate. Here, a Defendant had constructive knowledge that the Tango Entities were insolvent if that Defendant (or its agent acting within the scope of his or her agency) knew of facts that would cause a person of ordinary prudence under the same or similar circumstances to know or reasonably suspect that the Tango Entities were insolvent.[23]

A Defendant who knew or should have known that the Tango Entities were insolvent at the time of the Release did not act in good faith.[24]

**Source**: 11 U.S.C. § 548(c); LA. CIV. CODE ANN. art. 2038.

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

---

[21] 11 U.S.C. § 101(32)(A); *WRT Creditors Liquidation Trust v. WRT Bankr. Litig. Master File Defendants (In re WRT Energy Corp.)*, 282 B.R. 343, 410 (Bankr. W.D. La. 2001) (holding that the balance sheet test of insolvency applies to both constructive fraudulent transfer actions under the Bankruptcy Code and revocatory actions under Louisiana law); O'MALLEY § 164.230.

[22] *See* Court's Charge to the Jury [Docket No. 256] at 7, *Janvey v. GMAG LLC*, Case No. 3:35-CV-0401-N (N.D. Tex.) (Godbey, J.); RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006) ("For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal, unless the agent (a) acts adversely to the principal as stated in § 5.04, or (b) is subject to a duty to another not to disclose the fact to the principal.").

[23] *See* Court's Charge to the Jury [Docket No. 256] at 7-8, *Janvey v. GMAG LLC*, Case No. 3:35-CV-0401-N (N.D. Tex.) (Godbey, J.); RESTATEMENT (THIRD) OF AGENCY § 5.03 (2006); *cf. Campo v. Correa*, 828 So. 2d 502, 511 (La. 2001) ("Constructive knowledge is whatever notice is enough to excite attention and . . . call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead.").

[24] *See Meeks v. Red River Entm't of Shreveport (In re Armstrong)*, 285 F.3d 1092, 1096 (8th Cir. 2002) ("'[A] transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.'" (quoting *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355 (8th Cir. 1995))); *Doeling v. Grueneich (In re Grueneich)*, 400 B.R. 688, 693 (B.A.P. 8th Cir. 2009) ("A transferee does not act in good faith if he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency."); *see also Jobin v. McKay (In re M&L Bus. Mach. Co.)*, 84 F.3d 1330, 1336 (10th Cir. 1996) (noting that "the majority of bankruptcy courts construing 'good faith,' as it is used in § 548(c) . . . hold[] that a transferee who reasonably should have known of a debtor's insolvency . . . is not entitled to the § 548(c) good faith defense"); *Banner v. Kassow*, 104 F.3d 352, at *3 (2d Cir. 1996) (unpublished) (citing and quoting *Brown*, 67 F.3d at 1355 to conclude that because the transferee had at least inquiry notice of the transferor's potential insolvency, the trial court did not err in rejecting the transferee's good faith defense).

If you answered "No" to every Defendant listed in Question 5, then do not answer the following question.

If, in Question 5, you answered "Yes" to a listed Defendant, then answer the following question with respect to that Defendant. If, in Question 5, you answered "No" to a listed Defendant, then leave the space next to that Defendant's name blank on the following question.

## QUESTION 6

What amount of value, if any, did the following entities provide to the Tango Entities in exchange for the Release?

Answer in dollars and cents, if any:

    a. Navistar International     _____

    b. Navistar Inc.     _____

    c. ITA     _____

## INSTRUCTIONS FOR QUESTION 6:

If a Defendant received the Release in good faith, it has the burden to prove by a preponderance of the evidence what value, if any, it provided to the Tango Entities in exchange for the Release.[25]

To prove by a preponderance of the evidence means to prove something is more likely so than not so.[26]

"Value" means property, or satisfaction or securing of a present or antecedent debt of the Tango Entities, but does not include an unperformed promise to furnish support to the Tango Entities.[27]

With respect to this question, "value" is not necessarily determined by what the Tango Entities gained in the Release, but rather what a Defendant gave up, if anything, as its side of that bargain.[28]

**Source**: 11 U.S.C. § 548(c); LA. CIV. CODE ANN. art. 2038

---

[25] *See* 11 U.S.C. 548(c); LA. CIV. CODE ANN. art. 2038; *Coleman v. Robinson (In re Lenard)*, 849 F.2d 974, 979 (5th Cir. 1988) (construing article 2038 as requiring that "the good-faith purchaser recover what he paid" but "only to the extent of his investment").

[26] PJI 3.2 (modified).

[27] 11 U.S.C. § 548(d)(2)(A).

[28] *See Williams v. FDIC (In re Positive Health Mgmt.*), 769 F.3d 899, 904 (5th Cir. 2014) ("In measuring 'value' under section 548(c), therefore, this court looks not to 'the transferor's gain,' but rather to the value that the transferee gave up as its side of the bargain.").

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

If you answered "Yes" to Question 2 **or** you answered "No" to Question 4, then answer the following question.  Otherwise do not answer the following question.

## QUESTION 7

What was the value of the Engine Claims at the time of the Release?

Answer in dollars and cents, if any.

_____

INSTRUCTIONS FOR QUESTION 7:

In valuing the Engine Claims you may consider the types of damages available for successful claimants bringing those claims.

In a redhibition case, a successful plaintiff may obtain:

1.  A reduction of the original sales price, equal to the difference between the original sales price and the price that a reasonable buyer would have paid if he had known of the defects.[29]

    Factors to consider in deciding what a reasonable buyer would have paid include: (a) the cost of repairing the defects that existed at the time of sale,[30] (b) the difference between the original sales price and the price buyers were willing to pay after learning of the defects,[31] (c) the number of defects, (d) the frequency and length of attempted repairs of the defects, (e) the inconvenience associated with the repairs,[32] and (f) whether the products would ever satisfy the buyer's needs.[33]

2.  In addition, the amount of money necessary to compensate the plaintiff for all loss or injury that could have been foreseen at the time of purchase.[34]

3.  In addition, the amount of money necessary to compensate the plaintiff for all loss or injury, even if the loss or injury could *not* have been foreseen at the time of purchase,[35] including: (a) profits

---

[29] *See* La. Civ. Code art. 2541; *Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 939 (La. 1981).

[30] *See Shepard v. Robinson Const., LLC*, 170 So. 3d 387, 392 (La. Ct. App. 2015); *Lacey v. Baywood Truck & Mach.*, 381 So. 2d 863, 866 (La. Ct. App. 1980).

[31] *Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 939 (La. 1981).

[32] *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 656 (5th Cir. 2002)

[33] *See Louisiana AFL-CIO v. Lanier Bus. Prod., Inc.*, 797 F.2d 1364, 1369 (5th Cir. 1986).

[34] *See* La. Civ. Code art. 2545; La. Civ. Code art. 1996; *Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 940 (La. 1981).

[35] *See* La. Civ. Code art. 2545; La. Civ. Code art. 1997; *Poche v. Bayliner Marine Corp.*, 632 So. 2d 1170, 1174 (La. Ct. App. 1994); *Bendana v. Mossy Motors, Inc.*, 347 So. 2d 946, 950 (La. Ct. App. 1977).

that the plaintiff lost in the past because of the defective product,[36] (b) profits that the plaintiff would have earned in the future but for the defective product,[37] and (c) if the defective product caused the plaintiff to default on a contract with a leasing company, the amounts owed to that leasing company under the contract.[38]

4. The amount of money necessary to pay the plaintiff's attorney's fees.[39]

In a fraud case, a successful plaintiff may obtain:

1. A court order rescinding, or undoing, the contract that the defendant fraudulently induced the plaintiff to enter.

2. In addition, the amount of money necessary to compensate the plaintiff for all loss or injury caused by entering the contract.[40]

3. The amount of money necessary to pay the plaintiff's attorney's fees.[41]

In a consumer protection case under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, a successful plaintiff may obtain:

1. The amount of money necessary to compensate the plaintiff for all loss or injury that could have been foreseen at the time of purchase.[42]

2. If the defendant's conduct was intentional or showed a reckless disregard for the rights of others, an amount of money sufficient to punish the defendant and deter the defendant and others from committing similar wrongful act.[43]

**Source**: 11 U.S.C. § 550; Texas Pattern Jury Charge 105.32.

---

[36] *See Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-CV-0750, 2015 WL 3771781, at *2 (W.D. La. June 17, 2015); *Gaston v. Bobby Johnson Equip. Co.*, 771 So. 2d 848, 854-55 (La. Ct. App. 2000); *White v. Martin GMC Trucks, Inc.*, 359 So. 2d 1094, 1101 (La. Ct. App. 1978).

[37] *See Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-CV-0750, 2015 WL 3771781, at *2 (W.D. La. June 17, 2015); *Gaston v. Bobby Johnson Equip. Co.*, 771 So. 2d 848, 854-55 (La. Ct. App. 2000); *Hale Farms, Inc. v. Am. Cyanamid Co.*, 580 So. 2d 684, 694 (La. Ct. App. 1991).

[38] *See Fruge v. Toyota Motor Sales, U.S.A., Inc.*, 692 So. 2d 467, 473 (La. Ct. App. 1997).

[39] *See* DIAN TOOLEY-KNOBLETT & DAVID GRUNING, 24 LA. CIV. L. TREATISE, SALES § 11:22 (database updated Sept. 2018), Westlaw LACIVL.

[40] *See* La. Civ. Code art. 1958; *Schexnayder v. Schexnayder*, 249 So. 3d 995, 1002 (La. Ct. App. 2018).

[41] *See* La. Civ. Code art. 1958.

[42] *See* 815 Ill. Comp. Stat. Ann. 505/10a.

[43] *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 794 (Ill. Ct. App. 2008).

ACCEPTED: _____
REJECTED: _____
MODIFIED: _____

If you answered Question 7, then answer the following question.  Otherwise, do not answer the following question.

## QUESTION 8

If the Release had never happened and the Louisiana Lawsuit never dismissed, what would the Engine Claims be worth today?

Answer in dollars and cents, if any.

_____

INSTRUCTIONS FOR QUESTION 8:

In valuing the Engine Claims you may consider the types of damages available for successful claimants bringing those claims.

In a redhibition case, a successful plaintiff may obtain:

1. A reduction of the original sales price, equal to the difference between the original sales price and the price that a reasonable buyer would have paid if he had known of the defects.[44]

   Factors to consider in deciding what a reasonable buyer would have paid include: (a) the cost of repairing the defects that existed at the time of sale,[45] (b) the difference between the original sales price and the price buyers were willing to pay after learning of the defects,[46] (c) the number of defects, (d) the frequency and length of attempted repairs of the defects, (e) the inconvenience associated with the repairs,[47] and (f) whether the products would ever satisfy the buyer's needs.[48]

2. In addition, the amount of money necessary to compensate the plaintiff for all loss or injury that could have been foreseen at the time of purchase.[49]

3. In addition, the amount of money necessary to compensate the plaintiff for all loss or injury, even if the loss or injury could *not* have been foreseen at the time of purchase,[50] including: (a) profits

---

[44] *See* La. Civ. Code art. 2541; *Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 939 (La. 1981).

[45] *See Shepard v. Robinson Const., LLC*, 170 So. 3d 387, 392 (La. Ct. App. 2015); *Lacey v. Baywood Truck & Mach.*, 381 So. 2d 863, 866 (La. Ct. App. 1980).

[46] *Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 939 (La. 1981).

[47] *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 656 (5th Cir. 2002)

[48] *See Louisiana AFL-CIO v. Lanier Bus. Prod., Inc.*, 797 F.2d 1364, 1369 (5th Cir. 1986).

[49] *See* La. Civ. Code art. 2545; La. Civ. Code art. 1996; *Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 940 (La. 1981).

[50] *See* La. Civ. Code art. 2545; La. Civ. Code art. 1997; *Poche v. Bayliner Marine Corp.*, 632 So. 2d 1170, 1174 (La. Ct. App. 1994); *Bendana v. Mossy Motors, Inc.*, 347 So. 2d 946, 950 (La. Ct. App. 1977).

that the plaintiff lost in the past because of the defective product,[51] (b) profits that the plaintiff would have earned in the future but for the defective product,[52] and (c) if the defective product caused the plaintiff to default on a contract with a leasing company, the amounts owed to that leasing company under the contract.[53]

4. The amount of money necessary to pay the plaintiff's attorney's fees.[54]

In a fraud case, a successful plaintiff may obtain:

1. A court order rescinding, or undoing, the contract that the defendant fraudulently induced the plaintiff to enter.

2. In addition, the amount of money necessary to compensate the plaintiff for all loss or injury caused by entering the contract.[55]

3. The amount of money necessary to pay the plaintiff's attorney's fees.[56]

In a consumer protection case under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, a successful plaintiff may obtain:

1. The amount of money necessary to compensate the plaintiff for all loss or injury that could have been foreseen at the time of purchase.[57]

2. If the defendant's conduct was intentional or showed a reckless disregard for the rights of others, an amount of money sufficient to punish the defendant and deter the defendant and others from committing similar wrongful act.[58]

**Source**: *Sanders v. Hang (In re Hang)*, Bankr. No. 05-30655, Adv. No. 06-02274-C, 2007 WL 2344958, at *5 (Bankr. E.D. Cal. Aug. 16, 2007) ("The trustee is entitled to recover the 'greater of the value of the transferred property at the transfer date or the value at the time of the recovery.'"

---

[51] *See Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-CV-0750, 2015 WL 3771781, at *2 (W.D. La. June 17, 2015); *Gaston v. Bobby Johnson Equip. Co.*, 771 So. 2d 848, 854-55 (La. Ct. App. 2000); *White v. Martin GMC Trucks, Inc.*, 359 So. 2d 1094, 1101 (La. Ct. App. 1978).

[52] *See Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-CV-0750, 2015 WL 3771781, at *2 (W.D. La. June 17, 2015); *Gaston v. Bobby Johnson Equip. Co.*, 771 So. 2d 848, 854-55 (La. Ct. App. 2000); *Hale Farms, Inc. v. Am. Cyanamid Co.*, 580 So. 2d 684, 694 (La. Ct. App. 1991).

[53] *See Fruge v. Toyota Motor Sales, U.S.A., Inc.*, 692 So. 2d 467, 473 (La. Ct. App. 1997).

[54] *See* Dian Tooley-Knoblett & David Gruning, 24 La. Civ. L. Treatise, Sales § 11:22 (database updated Sept. 2018), Westlaw LACIVL.

[55] *See* La. Civ. Code art. 1958; *Schexnayder v. Schexnayder*, 249 So. 3d 995, 1002 (La. Ct. App. 2018).

[56] *See* La. Civ. Code art. 1958.

[57] *See* 815 Ill. Comp. Stat. Ann. 505/10a.

[58] *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 794 (Ill. Ct. App. 2008).

(quoting COLLIER ON BANKRUPTCY ¶ 550.02[e] (15th ed. 1984) and citing *Joseph v. Madray (In re Brun)*, 360 B.R. 669, 674-75 (Bankr. C.D. Cal. 2007))); *Govaert v. B.R.E. Holding Co., (In re Blitstein)*, 105 B.R. 133, 137 (Bankr. S.D. Fla. 1989) ("[T]he Trustee is entitled to at least a money judgment in the amount of the greater of the value at the time of the transfer; or the value at the time of recovery less the value of improvements made.").


ACCEPTED:   _____
REJECTED:    _____
MODIFIED:    _____

# CERTIFICATE

We, the jury, on this ___ day of _____, 2019, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering the following questions:

Answer "All" or list questions: _____

_____
PRESIDING JUROR

_____
Printed Name of Presiding Juror

If the answers to some questions were not unanimous, the jurors who agreed to those answers must certify as follows:

We agree to the answers to the following questions:

List questions: _____

Jurors' Signatures                              Jurors' Printed Names

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Dated: February 14, 2019

Respectfully submitted,

*/s/ J. Benjamin King*

J. Benjamin King (State Bar No. 24046217)
D. Benjamin Thomas (State Bar No. 24099991)
REID COLLINS & TSAI LLP
Thanksgiving Tower
1601 Elm Street, Suite 4250
Dallas, Texas 75201
214.420.8900 (Phone)
214.420.8909 (Fax)
bking@rctlegal.com
bthomas@rctlegal.com

Angela J. Somers (*Pro Hac Vice*)
Yonah Jaffe (*Pro Hac Vice*)
REID COLLINS & TSAI LLP
810 Seventh Avenue, Suite 410
New York, NY 10019
212.344.5200 (Phone)
212.344.5299 (Fax)
asomers@rctlegal.com
yjaffe@rctlegal.com

*Special Counsel for Plan Trustee*

## CERTIFICATE OF SERVICE

I certify that on February 14, 2019, a copy of the foregoing document was served on all counsel of record via the ECF system.

*/s/ J. Benjamin King*
J. Benjamin King