# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al., | § § § § | |
| v. | § § | Civil Action No. 4:17-CV-00598<br>Judge Mazzant |
| NAVISTAR INTERNATIONAL CORPORATION, et al. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Navistar Leasing Company ("NLC"), Navistar Financial Corporation ("NFC"), and Navistar Leasing Services Corporation's ("NLSC") Motion for Partial Summary Judgment (collectively, "Defendants") (Dkt. #106). Having considered the motion and the relevant pleadings, the Court finds the motion should granted in part and denied in part.

### BACKGROUND

In October 2014, Tango Transport, LLC; Tango Logistx, LLC; Gorman Group, Inc.; Tango Truck Services, LLC; Tango Enterprises, Inc.; and GMGO, LLC (collectively, "Tango") sued Defendants in Louisiana state court (referred to as, "Louisiana Litigation") (Dkt. #106 at p. 7). On or about August 20, 2015, the parties executed a Receipt, Release, and Settlement of all Claims and Indemnity Agreement ("Settlement Agreement") settling the Louisiana Litigation (Dkt. #106 at p. 7).

The Louisiana Litigation involved the alleged sale or lease of trucks from Defendants—those who join this motion and those who do not—to Tango. According to Tango, the trucks sold or leased by Defendants suffered extraordinary and unacceptable rates of breakdowns

caused by design elements contained in the trucks' MaxxForce engines (Dkt. #115 at p. 8). The Defendants to this motion—NLC, NFC, and NLSC—claim they did not design, manufacture, market, sell, warrant, or repair the trucks (Dkt. #106 at p. 6). Instead, NLC claims it was the lessor on truck leases between NLC and Tango Transport, LLC (Dkt. #106 at p. 5). NFC states that although it is a beneficiary on certain guaranties made by the Tango entities, it did not lease or finance any trucks (Dkt. #105 at p. 6). NLSC was also a leasing entity and beneficiary on the guaranties, but claims it had no contractual relationship with the Tango entities (Dkt. #106 at p. 6–7).

On April 6, 2016, Tango filed a Chapter 11 Voluntary Petition for Bankruptcy. *In re Tango Transport, LLC*, 16-40642 (Bankr. E.D. Tex.). On November 18, 2016, Christopher Moser ("Trustee"), as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango, filed this adversary proceeding. *Tango Transport, LLC v. Navistar Int'l Corp. (In re Tango Transport, LLC)*, 16-04109 (Bankr. E.D. Tex.). On December 19, 2017, this Court, adopting the Report and Recommendation of the United States Bankruptcy Judge, withdrew the reference of the adversary proceeding to the Bankruptcy Court (Dkt. #3).

In this adversary proceeding, the Trustee seeks to avoid the Settlement Agreement under 11 U.S.C. §§ 544(b)(1) and 548 to recover Tango's claims, or the value of the claims, under 11 U.S.C. § 550. *See Tango Transport, LLC*, 16-04109, (Dkt. #34). On October 11, 2018, Defendants filed their motion for partial summary judgment (Dkt. #106). On November 1, 2018, the Trustee filed a response to the motion (Dkt. #115). On November 9, 2018, Defendants filed a reply in support of their motion (Dkt. #126). On November 16, 2018, the Trustee filed a sur-reply to the motion (Dkt. #130).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth

particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)

## ANALYSIS

### I. Preliminary Issues

Before addressing the summary judgment arguments, the Court must resolve two preliminary issues. The first preliminary issue is how the Court should treat Defendants' summary judgment arguments. In this lawsuit, the Trustee seeks to avoid the Settlement Agreement entered into by Tango and Defendants to resolve the Louisiana Litigation under §§ 544 and 548. *See Tango Transport, LLC*, 16-04109, (Dkt. #34). If the Trustee succeeds in avoiding the Settlement Agreement, the Trustee will attempt to recover either the claims Tango transferred in the Settlement Agreement or the value of the claims Tango transferred under § 550. *See Tango Transport, LLC*, 16-04109, (Dkt. #34 at pp. 30–31).

Defendants move for summary judgment on nine claims asserted by Tango in the Louisiana Litigation (Dkt. #106). However, as explained, the Trustee does not allege Tango's claims in this suit. Instead, the Trustee seeks a return of Tango's claims or an award

4

representing the value of those claims. Therefore, the Court must consider Defendants' summary judgment arguments as they relate to the Trustee's potential recovery in this suit. In other words, if the Court finds summary judgment appropriate on a claim alleged by Tango in the Louisiana Litigation, the Trustee may not seek to recover the claim, or the value of the claim, in this lawsuit.[1]

The second issue is whether the Trustee may recover the value of only Tango's previously asserted claims or whether the Trustee may recover the value of its "litigation rights." The Trustee raises this issue in its response and sur-reply. For example, in response to Defendants' statement that the Trustee cannot recover the value of a Louisiana Unfair Trade Practice Act ("LUTPA") claim, as the Trustee did not assert this claim in its state-court amended petition, the Trustee contends, "[E]ven assuming *arguendo* that Tango would have been required to amend its pleading to assert a LUTPA violation, Tango could have amended its pleadings again as of right at the time the underlying claims were transferred." (Dkt. #130 at p. 6). In essence, the Trustee maintains that even if Tango did not assert a claim in the Louisiana Litigation, the Trustee should be allowed to recover the value of the unasserted claim, if the claim could have been asserted in an amended petition in the Louisiana Litigation.

In *West*, the court examined § 550 in the context of intangible assets. *West v. Hsu (In re Advanced Modular Power Sys., Inc.)*, 413 B.R. 643 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. West*, ADV 08-03177, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009). The court first decided to award the value of the intangible assets instead of transferring the property to the debtors. *Id.* at 679. The court noted that it had authority under § 550(a) to "use its discretion to restore the

---

1. In the event the Trustee succeeds in avoiding the Settlement Agreement, the Court will determine under § 550(a) whether to award the Trustee the property transferred—i.e. a return of Tango's claims—or the value of such property—i.e. the value of Tango's claims—post trial (Dkt. #115 at p. 6). However, the Court intends for the jury to consider Tango's claims in order to aid the Court in assessing the value of the claims, should the Court choose to award the Trustee the value of the claims.

5

estate to the position it would have been in had the assets never been fraudulently transferred out of the estate." *Id.* (citing *ASARCO LLC v. Ams. Mining Corp.*, 404 B.R. 150, 173 (S.D. Tex. 2009)). The court explained:

> In this suit, the actual value the Debtor's estate would have earned if it had use of the intangible assets is unknown. This lack of knowledge makes it difficult to determine the actual value the estate lost. However, as noted in *ASARCO*, the Court has the discretion to approximate these damages to make the estate whole. *See ASARCO*, 404 B.R. at 173. Using its discretion, the Court may approximate the value the Debtor's estate lost as a result of the Defendants fraudulently transferring the assets. *See id.* (exercising the court's power to determine the true value that the estate lost as a result of the fraudulent transfer).

*Id.*; *see also Galaz v. Galaz (In re Galaz)*, AP 08-5043-RBK, 2015 WL 457850, at *10 (Bankr. W.D. Tex. Jan. 23, 2015), *subsequently aff'd sub nom. Galaz v. Galaz (Matter of Galaz)*, 850 F.3d 800 (5th Cir. 2017) (citing *West* 413 B.R. at 678; *ASARCO*, 404 B.R. at 162). The analysis in *West* applies to this case.

If the Trustee succeeds in avoiding the Settlement Agreement, and the Court decides to award the Trustee the value of Tango's claims, the Court finds that the Trustee could recover the value of claims that Tango did not assert in the Louisiana Litigation for two reasons. First, but for the Settlement Agreement, the Trustee could have asserted additional claims in the Louisiana Litigation by filing an amended petition. Therefore, to put the estate in the position it would have been in had the claims not been fraudulently transferred through the Settlement Agreement, the Trustee should be able to recover the value of unasserted, but viable, claims. Second, the Settlement Agreement settled both Tango's asserted and unasserted claims (*See* Dkt. #244-1 at p. 3).[2] Consequently, if the Settlement Agreement is avoided as a fraudulent transfer, Tango is no longer bound by the release of its unasserted claims. For these reasons, the Court believes

---

2. The Court previously took judicial notice of the text of the Settlement Agreement (Dkt. #262 at p. 6 n.2).

6

that if the Trustee succeeds in avoiding the Settlement Agreement, and the Court decides to award the value of Tango's claims to the Trustee, the Trustee may seek to recover the value of Tango's viable claims—asserted and unasserted—that were transferred by the Settlement Agreement. This finding negates the summary judgment arguments made by Defendants that the Trustee is bound by the claims alleged in the Louisiana Litigation.

## II. Uncontested Claims

Defendants move for summary judgment on the following claims: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied covenant of good faith and fair dealing; (4) negligent misrepresentation; (5) fraudulent concealment; (6) unjust enrichment; (7) redhibition; (8) declaratory judgment; and (9) unfair trade practices (Dkt. #106 at pp. 13–22). The Trustee only contests summary judgment as to Tango's fraud and consumer protection claims (Dkt. #115; Dkt. #130).[3] Therefore, the Court **GRANTS** summary judgment on Tango's (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied covenant of good faith and fair dealing; (4) negligent misrepresentation; (5) unjust enrichment; (6) redhibition; and (7) declaratory judgment claims against NLC, NFC, and NLSC.

---

3. The Trustee opposes summary judgment on "Tango's fraud [and] consumer protection claims . . . ." (Dkt. #115 at p. 28). The Trustee does not mention redhibition in its response or sur-reply, so the Court assumes the Trustee does not oppose summary judgment as to this claim against these Defendants.

The Trustee also asserts an argument concerning equitable subordination (Dkt. #115 at pp. 26–28). The Court does not address the Trustee's argument as both parties note that Defendants do not seek summary judgment on the equitable subordination claim (Dkt. #115 at p. 26; Dkt. #126 at p. 8).

## III. Contested Claims

The Trustee contests summary judgment on Tango's fraudulent concealment and unfair trade practices claims. Before addressing the parties' summary judgment arguments on these claims, the Court must resolve a choice-of-law issue.

### A. Choice of Law

Defendants argue that Illinois law governs Tango's claims (Dkt. #106 at p. 13). The Trustee responds that while Illinois law applies to Tango's contract claims, Louisiana law governs Tango's fraud and statutory claims (Dkt. #115 at p. 21).

The Court must determine whether Illinois or Louisiana law governs Tango's fraudulent concealment and statutory claims. Defendants' argument rests on the following language contained in leases signed by Tango:

> This Lease, and all other documents executed pursuant hereto or in connection herewith and the rights and obligations of the parties hereunder or thereunder will be governed by the laws of the State of Illinois.

(Dkt. #106 at p. 13).[4] The Court finds that while this narrow choice-of-law provision governs contractual claims arising between the parties, the provision is too narrow to govern the fraudulent concealment and consumer protection claims. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003), *opinion modified on other grounds on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (finding that choice-of-law provision containing language, "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York . . . ." governed contract claims, but was too narrow to govern fraud and negligent misrepresentation claims).

---

4. The guaranties signed by the parties contain similar provisions.

Neither the United States Supreme Court nor the Fifth Circuit Court of Appeals has ruled on whether a district court, sitting in bankruptcy jurisdiction, is required to apply federal choice-of-law rules or is instead to apply the choice-of-law rules of the forum state. *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 536 (5th Cir. 2012); *ECN Capital Corp. v. Airbus Helicopters SAS (In re CHC Grp. Ltd.)*, 3:17-CV-00075-C, 2017 WL 1380514, at *19 (Bankr. N.D. Tex. Mar. 28, 2017). Federal courts apply the "independent judgment" test to resolve choice-of-law questions. *Airbus Helicopters SAS*, 2017 WL 1380514, at *19. Under this test, courts apply "'the law of the state with the most significant relationship to the particular substantive issue, as to the occurrence and the parties.'" *Hof v. Univ. Sys. of Maryland-Coppin Stated Univ. (In re Hof)*, 16-11179, 2018 WL 4215021, at *2 (Bankr. E.D. La. Aug. 28, 2018) (quoting *Tow v. Rafizadeh (In re Cyrus II Partnership)*, 413 B.R. 609 (Bankr. S.D. Tex. 2008)). Applying the independent judgment test, courts consider the factors from Section 145 of the Restatement (Second) of Conflicts of Law: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Id.* Texas courts apply the "most significant relationship" test to resolve choice-of-law issues. *Alarcon v. Velazquez*, 552 S.W.3d 354, 360 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The most significant relationship test considers the Section 145 factors of the Restatement as well as additional factors from Section 6 of the Restatement:

> (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field

> of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

*Feuerbacher v. Moser*, 4:11-CV-272, 2012 WL 1070138, at *11 (E.D. Tex. Mar. 29, 2012) (citing Restatement (Second) of Conflict of Laws § 6 (1971); *Mirant*, 675 F.3d at 536–37). Therefore, although it is unclear whether the Court should apply the federal choice-of-law test or the Texas choice-of-law test, the analysis is essentially the same. *See Mirant.*, 675 F.3d at 536 ("Sections 6 and 145 of the Restatement (Second) of Conflict of Laws . . . provide the appropriate analytical framework [for resolving conflicts-of-law issues when courts exercises bankruptcy jurisdiction]."); *Airbus Helicopters SAS*, 2017 WL 1380514, at *19 (The "application of both the federal choice of law rules and the Texas choice of law rules lead to an analysis of the same factors in determining which forum's substantive law should apply . . . .").

Considering the Section 6 and 145 factors, the Court determines Louisiana law governs Tango's fraudulent concealment and statutory claims. As to the Section 145 factors, the injury allegedly occurred in Louisiana as Tango signed the contracts and leases at issue in Louisiana (Dkt. #130-3 at p. 6); *Tango Transport, LLC*, 16-04109, (Dkt. #34 at pp. 7–23). Tango also claimed the wrongful conduct leading to the injury occurred in Louisiana (Dkt. #107 at p. 4); *Tango Transport, LLC*, 16-04109, (Dkt. #34 at pp. 7–23). The domicile, residence, nationality, place of incorporation, and place of business of the parties are mixed but relates mostly to Louisiana. The Tango debtors are Texas entities that conducted business in Louisiana (Dkt. #130-3 at pp. 2–3); *Tango Transport, LLC*, 16-04109, (Dkt. #34 at pp. 5–7). The Navistar defendants are Delaware entities, with places of business in Illinois (Dkt. #130-3 at pp. 3–4); *Tango Transport, LLC*, 16-04109, (Dkt. #34 at pp. 5–7). However, Defendant ITA Truck Sales & Service is a limited liability company organized under the laws of Louisiana, doing business in

Louisiana (Dkt. #130-3 at p. 4); *Tango Transport, LLC*, 16-04109, (Dkt. #34 at pp. 5–7). Therefore, the relationship of the parties centered in Louisiana.

As to the Section 6 factors, the Court finds these factors also favor Louisiana. The basic policy at issue is protecting consumers from fraudulent business practices. As both Illinois and Louisiana adopted consumer protection laws, the application of either states' law advances the underlying policy. *See Feuerbacher v. Moser*, 2012 WL 1070138, at *11; 815 ILL. COMP. STAT. 505/1; LA. REV. STAT. § 51:1401. Moreover, at this case arises from a Louisiana state-court case, concerning conduct occurring predominantly in Louisiana, between parties doing business in Louisiana, the Court finds Louisiana has the greatest interest in the application of the law in this case. Finally, the ease in the determination and application of the law to be applied favors Louisiana—the state where the Louisiana Litigation was brought. When the Court considers the qualitative nature of each relevant contact and the factors set for in Sections 6 and 145, the scales tip in favor of applying Louisiana law.

### B. Fraudulent Concealment and Unfair Trade Practices

Under Louisiana law, an action for fraud against a party to a contract requires:

> (1) "a misrepresentation, suppression, or omission of true information;" (2) "the intent to obtain an unjust advantage or to cause damage or inconvenience to another;" and (3) that the error induced by the fraudulent act relates to a circumstance that substantially influenced the victim's consent to the contract.

*Petrohawk Properties, L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 388 (5th Cir. 2012) (quoting *Shelton v. Standard/700 Assocs.*, 2001-0587 (La. 10/16/01, 3), 798 So. 2d 60, 64). A plaintiff states a claim for fraudulent concealment under Louisiana law relating to defective vehicles when the plaintiff alleges the defendant "'committed fraud by concealing or suppressing the truth about the defect in its vehicles, which gave plaintiffs the misimpression that [the defendant's]

11

products were not defective and induced them to purchase them.'" *Becnel v. Mercedes-Benz USA, LLC*, CIV.A. 14-0003, 2014 WL 1918468, at *10 (E.D. La. May 13, 2014) (quoting *In re Ford Motor Co. Vehicle Paint Litig.*, MDL 1063, 1996 WL 426548, *17 (E.D. La. July 30, 1996)).

Defendants argue the Trustee did not plead the elements of fraudulent concealment, and even if he did, there is no evidence to establish the elements under Louisiana law (Dkt. #106 at p. 15–16). The Trustee responds first that Defendants are alter egos of each other (Dkt. #115 at pp. 17–20). The Trustee then provides evidence that Defendants fraudulently concealed information about the defects of trucks containing MaxxForce engines to induce Tango to enter into leases for the trucks (Dkt. #115 at pp. 22–25). Defendants reply that the Trustee's alter ego theory is barred because the theory is newly asserted (Dkt. #126 at p. 6).

After careful consideration of the evidence and arguments presented in the pleadings, the Court finds a genuine issue of material fact as to whether: (1) the Defendants are alter egos of each other and (2) one or all of the Defendants fraudulently concealed information from Tango to induce Tango to sign leases. The Court will not bar the Trustee from arguing an alter ego theory, whether or not originally alleged in the Louisiana Litigation, for the reasons described in Section I above. As a result, the Court **DENIES** summary judgment on Tango's fraudulent concealment claim.

### C. Unfair Trade Practices

"The LUTPA . . . declares that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." *Cupp Drug Store, Inc. v. Blue Cross & Blue Shield of La., Inc.*, 49,482 (La .App. 2 Cir. 1/7/15, 14), 161 So.3d 860, 868, *writ denied*, 2015-0571 (La. 5/22/15), 171 So.3d 249. The LUTPA grants a right of action to any

business competitor, consumer, or person "who suffers an ascertainable loss" as a result of another person's unfair or deceptive acts. *J. A. Davis Properties, LLC v. Martin Operating P'ship, LP*, 2017-449 (La. App. 3 Cir. 6/21/17, 4), 224 So. 3d 39, 43 (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633 (La. 4/23/10), 35 So. 3d 1053, 1057 (plurality)). The Louisiana Supreme Court consistently holds "that in establishing a LUTPA claim, a plaintiff must show that 'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14, 21), 144 So. 3d 1011, 1025 (citations omitted). "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on [the] LUTPA." *Cheramie Servs., Inc.*, 35 So. 3d at 1060.

Defendants move for summary judgment on Tango's claims against NLC under the LUTPA (Dkt. #106 at pp. 19–20). Defendants argue that because Tango premises its LUTPA claim on the defective-engine allegations, Tango cannot maintain its claim against NLC as NLC did not design, manufacture, market, sell, warrant, or repair the Trucks sold and leased to Tango. After careful consideration of the evidence and arguments presented in the pleadings, the Court finds genuine issues of material fact exist as to Tango's LUTPA claim. Accordingly, the Court **DENIES** summary judgment on Tango's unfair trade practices claim.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Partial Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART** (Dkt. #106). The Court **GRANTS** summary judgment in favor of Defendants NLC, NFC, and NLSC on Tango's (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied

covenant of good faith and fair dealing; (4) negligent misrepresentation; (5) unjust enrichment; (6) redhibition; and (7) declaratory judgment claims. The Court **DENIES** summary judgment on Tango's fraudulent concealment and LUTPA claims as to NLC, NFC, and NLSC.

**IT IS SO ORDERED.**

**SIGNED this 28th day of February, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE