# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | § | |
|---|---|---|
| CHRISTOPHER MOSER as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango Transport, LLC, et al., | § § § § | |
| v. | § § | Civil Action No. 4:17-CV-00598 Judge Mazzant |
| NAVISTAR INTERNATIONAL CORPORATION, et al. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Navistar International Corporation ("NIC"), Navistar, Inc., and ITA Truck Sales & Service, LLC ("ITA") (collectively, "Defendants") Motion for Summary Judgment (Dkt. #107). Having considered the motion and the relevant pleadings, the Court finds the motion should be granted in part and denied in part.

### BACKGROUND

In October 2014, Tango Transport, LLC; Tango Logistx, LLC; Gorman Group, Inc.; Tango Truck Services, LLC; Tango Enterprises, Inc.; and GMGO, LLC (collectively, "Tango") sued Defendants in Louisiana state court (referred to as, "Louisiana Litigation") (Dkt. #107 at pp. 4–7). On or about August 20, 2015, the parties executed a Receipt, Release, and Settlement of all Claims and Indemnity Agreement ("Settlement Agreement") settling the Louisiana Litigation (Dkt. #107 at pp. 4–7).

The Louisiana Litigation involved the alleged sale or lease of trucks from Defendants—those who join this motion and those who do not—to Tango. According to Tango, the trucks sold or leased by Defendants suffered extraordinary and unacceptable rates of breakdown caused by design elements of the trucks' MaxxForce engines (Dkt. #109 at p. 12). The Defendants to

this motion are NIC, Navistar, Inc., and ITA. NIC claims it is merely a holding company and should be dismissed summarily (Dkt. #107 at p. 3). Navistar, Inc. manufactured the trucks at issue (Dkt. #107 at p. 5). ITA allegedly sold trucks to Tango. (Dkt. #107 at p. 5).

On April 6, 2016, Tango filed a Chapter 11 Voluntary Petition for Bankruptcy. *In re Tango Transport, LLC*, 16-40642 (Bankr. E.D. Tex.). On November 18, 2016, Christopher Moser ("Trustee"), as Plan Trustee of the Trust Under the Amended Joint Plan of Liquidation of Tango, filed this adversary proceeding. *Tango Transport, LLC v. Navistar Int'l Corp. (In re Tango Transport, LLC)*, 16-04109 (Bankr. E.D. Tex.). On December 19, 2017, this Court, adopting the Report and Recommendation of the United States Bankruptcy Judge, withdrew the reference of the adversary proceeding to the Bankruptcy Court (Dkt. #3).

In this adversary proceeding, the Trustee seeks to avoid the Settlement Agreement under 11 U.S.C. §§ 544(b)(1) and 548 to recover Tango's claims, or the value of the claims, under 11 U.S.C. § 550. *See Tango Transport, LLC*, 16-04109, (Dkt. #34). On October 11, 2018, Defendants filed the motion for summary judgment (Dkt. #107). On November 1, 2018, the Trustee filed a response to the motion (Dkt. #109). On November 9, 2018, Defendants filed a reply to the motion (Dkt. #128). On November 16, 2018, The Trustee filed a sur-reply to the motion (Dkt. #131).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting*

*Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)

## ANALYSIS

### I. Preliminary Issues

The Court resolved two preliminary issues that are applicable here in its order addressing Defendants Navistar Leasing Company, Navistar Financial Corporation, and Navistar Leasing Services Corporation's Motion for Partial Summary Judgment (Dkt. #282). Without restating the analysis, the Court (1) considers Defendants' summary judgment arguments as they relate to the Trustee's potential recovery in this suit and (2) finds if the Trustee succeeds in avoiding the Settlement Agreement, and the Court decides to award the value of Tango's claims to the Trustee, the Trustee may seek to recover the value of Tango's viable claims—asserted and unasserted—that were transferred by the Settlement Agreement.

### II. Uncontested Claims

Defendants move for summary judgment on the following claims alleged by Tango: (1) 119 Model Year 2011 ("MY11") trucks; (2) breach of implied warranty of merchantability; (3) implied covenant of good faith and fair dealing; (4) negligent misrepresentation; (5) fraudulent concealment; (6) unjust enrichment; and (7) violations of unfair trade practices and consumer protection law (Dkt. #107). "The Trustee does not contest the Motion as it pertains to claims against ITA for breach of express warranty, breach of implied warranty of merchantability, and breach of the implied covenant of good faith and fair dealing. The Trustee does not contest the Motion as it pertains to claims against NIC." (Dkt. #109 at p. 31). Accordingly, the Court

**GRANTS** summary judgment on Tango's breach of express warranty, breach of implied warranty of merchantability, and breach of the implied covenant of good faith and fair dealing claims against ITA. Moreover, the Court **GRANTS** summary judgment on all of Tango's claims against NIC.

### III. Contested Claims

#### A. 119 Trucks

Defendants first argue for summary judgment on Tango's claims relating to the MY11 trucks as these trucks did not contain the allegedly defective engine (Dkt. #107 at p. 11). Specifically, Defendants argue that the MY11 trucks were designed to meet the 2007 Environmental Protection Agency ("EPA") standards, not the 2010 EPA standards alleged in the Trustee's Amended Complaint (Dkt. #107 at p. 11). The Trustee responds providing evidence that the trucks purchased by Tango—regardless of model year and emissions standards—experienced excessive breakdowns caused by the trucks' defective engines (Dkt. #109 at pp. 18–19). The Court **DENIES** summary judgment as to Tango's claims concerning the 119 MY11 trucks as genuine issues of material facts preclude summary judgment.

#### B. Navistar, Inc.

##### i. The LPLA

Defendants next contend that the exclusivity of the Louisiana Products Liability Act ("LPLA") bars claims against Navistar, Inc. except for LPLA and redhibition claims (Dkt. #107 at pp. 12–15). Specifically, Defendants seek summary judgment on Tango's (1) breach of implied warranty of merchantability; (2) breach of implied covenant of good faith and fair dealing; (3) negligent misrepresentation; (4) fraudulent concealment; (5) unjust enrichment; and (6) violation of unfair trade practices and consumer protection law claims.

5

The LPLA provides, "This Chapter establishes the exclusive theories of liability for manufacturers for *damage* caused by their products. A claimant may not recover from a manufacturer for *damage* caused by a product on the basis of any theory of liability that is not set forth in this Chapter." LA. REV. STAT. § 9:2800.52 (emphasis added). The LPLA defines "damage:"

> "Damage" means all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery. "Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled *"Redhibition," does not allow recovery for such damage or economic loss*. Attorneys' fees are not recoverable under this Chapter.

LA. REV. STAT. § 9:2800.53 (emphasis added). "In other words, a plaintiff must bring an action under the LPLA to recover all damages caused by a product, except for damage to the product itself and economic loss sought under the Chapter 9 Redhibition articles." *NAZ, LLC v. Philips Healthcare, a Div. of Philips Elecs. N. Am. Corp.*, CV 17-2882, 2018 WL 1202570, at *7 (E.D. La. Mar. 8, 2018) (citing John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 LA. L. REV. 565 (1989)).[1] "Grappling with the plain language of the statute and comments to the Civil Code, courts have struggled to define the scope of this carve-out." *Id*. *Naz* provides a helpful explanation on the scope of the carve-out:

> [T]here is a consensus that the LPLA does not preclude a redhibitory action against the manufacturer seeking economic loss damages. Where a plaintiff seeks to recover against the manufacturer for damages other than economic loss in redhibition,

---

1. "[T]he LPLA governs products liability in tort and recovery under the statute will normally be limited to recovery for personal injury and damage to property other than the product itself, which properly are the subject of a products liability tort claim. Recovery for damage to the product itself or economic loss arising from a deficiency in or loss of use of the product will normally not be compensable under the LPLA, because those items of damage properly are the subject of a claim in redhibition for breach of implied warranty. If, however, a claimant cannot proceed in redhibition for some reason, he can recover his damages in redhibition under the LPLA." Kennedy, *supra* at 580.

6

> the cause of the damage determines the LPLA's preclusive effect. Where a plaintiff does not seek damages caused by the product itself, but, rather, seeks damages based on contractual obligations beyond the scope of the express or implied warranty for redhibition, courts have found that the LPLA does not preclude such an action.

*Id.* at *7–8 (citations omitted). The Court applies this analysis to Tango's claims.

The Court **GRANTS** summary judgment on Tango's claim for breach of implied warranty of merchantability against Navistar, Inc. because it is precluded by the LPLA as Tango seeks damages caused by the product itself. *See Pramann v. Janssen Pharm., Inc.*, CV 16-12413, 2017 WL 58469, at *2 (E.D. La. Jan. 5, 2017) (finding implied warranty of merchantability claim barred by LPLA). Asserting its breach of implied warranty of merchantability claim, Tango alleged:

> The Tango Vehicle Purchasers suffered economic damage, including loss attributable to the diminished value of its Engines, loss of use, as well as the monies spent and to be spent to repair and/or replace its Engines, and other actual and economic damages including, but not limited to, being unable to hire and retain drivers due to the known problems with the MaxxForce Engines and the fact that Tango is known to have these types of trucks in its fleet. Further, the defects in the MaxxForce Engines have negatively impacted Plaintiffs' financial condition and as a result of Plaintiffs' utilizing these vehicles with the MaxxForce Engines to its detriment and loss; Plaintiffs have suffered loss of profits; downtime expenses and losses; out-of-pocket repair expenses; fuel expenses incurred in excess of represented amounts; towing expenses; lodging expenses for Plaintiffs' drivers; driver downtime; detour fuel expenses, costs and driver time; diminished resale value of the vehicles at issue; loss of revenue; loss of customer goodwill; and other economic, financial, consequential and incidental damages as allowed by law or equity.

(Dkt. #107-3 ¶ 84; Dkt. #130-2 ¶ 89). The damages sought by Tango under its implied warranty of merchantability claim are damages caused by the product or to the product itself and, therefore, must be recovered under an LPLA or rehibition claim.

The Court also **GRANTS** summary judgment on Tango's implied covenant of good faith and fair dealing claim against Navistar, Inc. Under Louisiana law, a party must allege a breach of contract claim in order to assert a claim for a breach of the duty of good faith and fair dealing. *Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of La., Inc.*, CV 14-00235-BAJ-RLB, 2016 WL 4445250, at *3 (M.D. La. Aug. 19, 2016). Tango did not allege a breach of contract claim in the Louisiana Litigation and does not now claim that it could have asserted such a claim. (*See* Dkt. #107-3; Dkt. #130-2). Instead, Tango only asserts, "the LPLA could not have applied to Tango's claims, and the LPLA did not preclude Tango from successfully bringing any of the claims alleged in either its original or amended petition. At the least, . . . the LPLA did not preclude Tango from bringing its fraudulent concealment claim (Dkt. #109 at p. 24).

The Court also **GRANTS** summary judgment on Tango's consumer protection claim against Navistar, Inc. for similar reasons. Courts analyzing the relationship between the LPLA and the Louisiana Unfair Trade Practice Act ("LUTPA") consistently hold that the LPLA precludes LUTPA claims. *See Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 767 (W.D. La. 2007); *Cantu v. C.B. Fleet Holding Co., Inc.*, 2:06CV2168, 2007 WL 689566, at *2 (W.D. La. Mar. 1, 2007).

The Court **DENIES** summary judgment on Tango's fraudulent concealment, negligent misrepresentation, and unjust enrichment claims against Navistar, Inc. because the claims are not subject to the LPLA's exclusivity provision as the claims are predicated on a contract-based fraud theory. *See C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, CIV.A. 10-4441, 2013 WL 990026, at *6 (E.D. La. Mar. 13, 2013) (denying motion to dismiss finding, "The economic damages [plaintiff] is seeking are not by virtue of an action in redhibition and are not

caused by the product itself. Thus, [plaintiff] may bring a claim for breach of contract-based fraud, on its own or in addition to a claim under the LPLA or redhibition."); *In re Ford Motor Co. Vehicle Paint Litig.*, MDL 1063, 1996 WL 426548, at *16 (E.D. La. July 30, 1996) ("[T]he Court does not hold, that plaintiff's Louisiana fraud claims are preempted by the LPLA. Their fraud claims are essentially predicated on a contract-type fraud theory, i.e., that plaintiffs were fraudulently induced to purchase Ford vehicles based on misstatements and omissions by Ford that the vehicles were free of defects . . . . The preemptive force of the LPLA extends to claims based on tort duties; thus, the Act does not bar redhibition actions, which are based on warranty theories. Further, the redhibition articles do not preclude fraud claims against a seller . . . .").

  ii. **Express Warranty**

 Defendants next argue there is no evidence to establish that Navistar, Inc. breached any express warranty to Tango (Dkt. #107 at p. 18). "[T]he LPLA . . . provides for a claim against a manufacturer for damages arising from a product that is unreasonably dangerous because of its nonconformity to an express warranty made by the manufacturer." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002) (citing LA. REV. STAT. § 9:2800.58). The Trustee responds that Navistar, Inc. made express warranties to Tango that it would repair or replace any defective parts (Dkt. #109 at pp. 28–29). The Trustee maintains the repairs and replacements did not remedy the defective engines, and only replaced defective parts with other defective parts (Dkt. #109 at p. 29). As a result, the Court **DENIES** summary judgment on Tango's express warranty claim against Navistar, Inc. as a genuine issue of material fact precludes summary judgment on the claim.

## C. ITA

Defendants next move for summary judgment on the claims asserted by Tango against ITA (Dkt. #107 at pp. 17–18). As noted above, the Trustee does not oppose summary judgment as to Tango's claims against ITA for summary judgment on Tango's breach of express warranty, breach of implied warranty of merchantability, and breach of the implied covenant of good faith and fair dealing claims against ITA (Dkt. #109 at p. 31). However, the Trustee opposes summary judgment on Tango's claims against ITA for negligent misrepresentation, fraudulent concealment, unjust enrichment, and the LUTPA (Dkt. #109 at pp. 29–30). Defendants claim that the Trustee cannot produce any evidence to establish the essential elements of these causes of action against ITA under Louisiana law (Dkt. #107 at p. 17). The Trustee responds citing evidence that ITA knew of the defects in the trucks but represented otherwise to Tango (Dkt. #109 at pp. 29–30). After careful consideration of the pleadings and evidence, the Court finds genuine issues of material fact exist on the remaining claims against ITA and, therefore, **DENIES** summary judgment on these claims.

## D. Redhibition

The Defendants next move for summary judgment on Tango's redhibition claims against the Defendants arguing: (1) redhibition claims cannot be asserted for leased trucks; (2) Tango knew of the trucks' defects before purchasing the trucks; and (3) the claims are prescribed. The Louisiana Civil Code provides:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

La. Civ. Code art. 2520.

### i. Leased Trucks

Defendants first argue that Tango cannot assert a redhibition claim for 207 of the 454 trucks at issue because Tango leased the trucks (Dkt. #107 at pp. 20–21). The Trustee responds that under Louisiana law a lessee can bring a redhibition claim for leased property when the lessor assigned their warranty rights against the manufacturer to the lessee (Dkt. #109 at pp. 20–23). The Trustee explains that Tango Transport, LLC operated the leased trucks. Tango leased these trucks from two "sister" companies—Tango Leasing and BJG Logistics—and some unrelated companies—Caterpillar/FCC, BB&T, and Navistar Leasing. These lessors purchased the trucks from ITA. The Trustee also cites the following language in a purchase order between ITA (seller) Navistar Leasing Company (lessor) and Tango Transport LLC (lessee) stating:

> Seller agrees that all warranties, agreements and representations made by Manufacturer or by Seller to the Lessee or to Navistar Leasing Company shall be fully enforceable by Navistar Leasing Company and/or Lessee in its own name.

(Dkt. #109 at p. 9).

"A plaintiff in a redhibitory action seeks to avoid a sale due to some vice or defect in the thing sold, based upon an alleged breach of the implied warranty of fitness which is associated with all sales." *Ponder v. Gambrell*, 490 So. 2d 708, 710 (La. Ct. App. 1986). "[A] redhibition cause of action relates to error in the cause of completed sales, and, absent a sale, the redhibition articles do not apply." *Alvis v. CIT Grp./Equip. Fin., Inc.*, 2005-0563 (La. App. 3 Cir. 12/30/05, 10), 918 So. 2d 1177, 1183, *writ denied*, 2006-0226 (La. 4/24/06), 926 So. 2d 552 (citing *Stack*

*v. Irwin*, 246 La. 777, 167 So. 2d 363 (1964)). However, at least two cases have held that a redhibition cause of action is viable by a lessee when a buyer assigns its redhibition or warranty rights to the lessee. *See Dugan v. Mercedes-Benz USA, LLC*, CV 16-6451, 2017 WL 44992, at *2 (E.D. La. Jan. 4, 2017) (citing *Alvis*, 918 So. 2d at 1183–84; *Nelson Radiology Assocs., L.L.C. v. Integrity Med. Sys., Inc.*, 2008-0443 (La. App. 4 Cir. 7/29/09, 2), 16 So. 3d 1197, 1201) ("Although redhibition requires a sale, a redhibition claim need not be brought by the buyer. Redhibition claims may be assigned."); *Curtis v. GMAC Leasing Corp.*, 506 So. 2d 209, 211 (La. Ct. App. 1987), *writ denied*, 508 So. 2d 70 (La. 1987) ("[Lessees] as the consumers should have the right to assert an action in redhibition and not have their rights relegated to [Lessor]. [Seller] knew that [Lessor] was going to lease the vehicle to [Lessees] and that they were to be the ultimate consumer/user of the vehicle. [Lessees] were assigned through their lease agreement with [Lessor] all of [Lessor's] rights as purchasers to enforce the warranties arising out of the sale of the automobile by [Seller]."); *see also Capitol City Leasing Corp. v. Hill*, 404 So. 2d 935, 939–40 (La. 1981); *Ewing & Salter, Inc. v. Gafner Auto. & Mach. Inc.*, 392 So. 2d 762, 763 (La. Ct. App. 1980), *writ denied sub nom. Ewing & Salter, Inc. v. Gafner Auto. & Mach. Inc.*, 396 So. 2d 933 (La. 1981) ("[Seller] sold to [Lessor] a new 4000F Iron Mule manufactured by [Manufacturer] for a purchase price of $19,570.00. [Lessee] entered into a lease agreement with [Lessor] . . . . The lease agreement provided for the assignment of all of [Lessor's] rights of warranty relative to the sale of the Iron Mule to [Lessee]. Thus, [Lessee] as lessee/assignee of the warranty rights prosecutes this action in redhibition.").

Regarding the leased trucks at issue here, there is evidence that the buyers of the leased vehicles assigned their redhibition and warranty rights to Tango. Under the cited case law, a

valid assignment of redhibition or warranty rights enables a lessee to maintain a redhibition claim against the seller.

### ii. Knowledge of Defects

Defendants next argue that because Tango knew of the alleged "defects" at the time it purchased the trucks, Louisiana law bars Tango's redhibition claim (Dkt. # 107 at pp. 21–24). Defendants explain that Tango purchased or leased the subject trucks in three stages: once in 2010, again in 2011, and finally in 2012. Citing the Trustee's Amended Complaint, Defendants note that Tango began experiencing problems with the trucks acquired in 2010, but continued to acquire trucks in 2011 and 2012. Therefore, Defendants contend Tango is "barred from pursuing redhibitory defect claims concerning the trucks it purchased or leased in 2011 and beyond . . . ." (Dkt. #107 at p. 24). The Trustee responds that while some at Tango expressed concern about the trucks' engines, Tango continued to rely upon Navistar's assurances that it had resolved the problems and subsequent models of the truck would perform more reliably (Dkt. #109 at pp. 23–24). The parties provide similar arguments and evidence in the reply and sur-reply. (Dkt #128 at pp. 2–7; Dkt. #131 at pp. 2–5).

"The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." LA. CIV. CODE art. 2521. "To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the thing sold." *Stuck v. Long*, 40,034 (La. App. 2 Cir. 8/17/05, 7), 909 So. 2d 686, 691, *writ denied*, 2005-2367 (La. 3/17/06), 925 So. 2d 546. "A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness." *Id.* (citations omitted). "Whether an inspection

is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection, *and the assurances made by the seller*." *Id.* (emphasis added) (citing *McMorris v. Marcotte Builders, L.L.C.*, 98-2302 (La. App. 1 Cir. 12/28/99, 5), 756 So. 2d 424, 428, *writ denied*, 2000-0664 (La. 4/20/00), 760 So. 2d 1158; *Morrison v. Allstar Dodge, Inc.*, 2000-0398 (La. App. 1 Cir. 5/11/01, 7), 792 So. 2d 9, 14, *writ denied*, 2001-2129 (La. 11/2/01), 800 So. 2d 878).

After a careful review of the evidence, arguments, and the law, the Court finds a genuine issue of material fact exists concerning whether Tango knew of the alleged defects at the time of the 2010, 2011, and 2012 purchases, and whether Tango acted as a reasonably prudent buyer.

### iii. Prescription

Defendants next move for summary judgment on Tango's redhibition claims suggesting the claims are prescribed (Dkt. #107 at 24–27). A liberative prescription is the Louisiana equivalent of what Texans, and others, refer to as a statute of limitations.[2] An action for redhibition "against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first." LA. CIV. CODE art. 2534A(1). "The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer." LA. CIV. CODE art. 2534(B). "A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing." LA. CIV. CODE art. 2545.

---

2. "First introduced in Roman law by imperial constitution under Theodosius II, liberative prescription is a mode of barring a demand for the enforcement of a legal right. In other words, it is a 'statutory time-bar' . . . ." Jeffrey J. Gelpi, *Has Prescription Preempted Peremption?: A Plea to Bury the Ghosts of Survival Actions*, 89 Tul. L. Rev. 253, 256–57 (2014) (citations omitted).

As a manufacturer, Navistar, Inc. is presumed to know that the trucks it sold possessed redhibitory defects. Therefore, Article 2534(B) applies to Navistar, Inc. while Article 2534A(1) applies to the other Defendants. As stated above, Tango acquired its first trucks in 2010 but did not file suit against Defendants until 2014. As a result, Defendants argue Tango's redhibition claim is barred by prescription.

The Trustee responds with two arguments (Dkt. #109 at pp. 24–25). First, Tango asserts that it acted reasonably under the circumstances. Louisiana Courts do not apply prescription "literally to commence the running of prescription on the first indication that there is a problem with the product manufactured or sold." *In re Ford Motor Co. Vehicle Paint Litig.*, MDL 1063, 1997 WL 539665, at *8 (E.D. La. Aug. 27, 1997). Instead, "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423–24 (La. 1987); *Leo v. Jeld-Wen, Inc.*, CV 16-00605-BAJ-EWD, 2018 WL 2187408, at *3 (M.D. La. May 11, 2018). Typically, prescription begins when the buyer has a reasonable basis for pursuing a claim against a specific defendant. *Id.* at 424. A defendant's assurances or discouragement of litigation may help a plaintiff establish that their delay was reasonable. *Knaps v. B & B Chem. Co., Inc.*, 828 F.2d 1138, 1140 n.2 (5th Cir. 1987). The Trustee maintains Tango acted reasonably based on Defendants' assurances that the trucks would be repaired, or newer models would not experience similar issues.

Second, the Trustee cites the repair-interruption exception of Article 2534(C). "In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs." LA. CIV. CODE art. 2534(C). "'[I]nterruption of prescription will occur when there has been verbal or written communication which would *reasonably lead a*

15

*buyer to believe that the defects complained of would be remedied.*'" *Sw. La. Hosp. Ass'n v. BASF Const. Chemicals, LLC*, 947 F. Supp. 2d 661, 688 (W.D. La. 2013), *amended* (Sept. 6, 2013) (emphasis in original) (quoting *Sigma Servs. Corp. v. Capital Mack-GMC, Inc. (In re Sigma Servs. Corp.)*, 16 B.R. 611 (Bankr. M.D. La. 1981)). "[T]he interruption of prescription continues as long as the seller has communicated to the purchaser, orally or in writing, that the defect can be remedied." *Seeman v. Clearview Dodge Sales, Inc.*, 467 So. 2d 1332, 1333 (La. Ct. App. 1985) (citing *Sweeney v. Vindale Corp.*, 574 F.2d 1296 (5th Cir. 1978)). The Trustee cites evidence that Navistar regularly attempted to repair the trucks and told Tango that the fixes would improve the trucks' reliability (Dkt. #109 at pp. 13–18, 25). The Trustee's evidence dates as late as October–November 2013—within the one-year prescriptive period before Tango filed suit.[3] Based upon this evidence, and the analysis described in the previous two subsections, the Court **DENIES** summary judgment on Tango's redhibition claims against Navistar, Inc. and ITA.

## CONCLUSION

It is therefore **ORDERED** that Defendants NIC, Navistar, Inc., and ITA's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART** (Dkt. #107). The Court **GRANTS** summary judgment on Tango's claims for breach of implied warranty of merchantability, implied covenant of good faith and fair dealing, and Louisiana consumer protection claims against Navistar, Inc. The Court further **GRANTS** summary judgment on Tango's breach of express warranty, breach of implied warranty of merchantability, and breach of implied covenant of good faith and fair dealing claims against ITA. Moreover, the Court

---

3. Defendants argue in their reply that the Trustee bears the burden of establishing interruption of prescription for each subject truck (Dkt. #128 at p. 10). The Court finds this argument odd considering that Defendants chose to treat the truck sales to Tango as "three" group sales in its motion—the 2010, 2011, and 2012 groups (Dkt. #107 at p. 22).

**GRANTS** summary judgment on all of Tango's claims against NIC. The Court **DENIES** all other relief requested in Defendants' motion.

    **IT IS SO ORDERED.**

    **SIGNED** this 28th day of February, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE